Argued October 5, affirmed December 3, 1964

# OREGON ORCHARDS, INC. *v.* INSURANCE COMPANY OF NORTH AMERICA
## 397 P. 2d 75

*E. R. Bashaw*, Medford, argued the cause for appellant. With him on the briefs were Jones & Reeder, Medford.

*William V. Deatherage* and *Philip B. Lowry*, Medford, argued the cause for respondent. On the brief were Frohnmayer, Lowry & Deatherage, Medford.

Before McAllister, Chief Justice, and Rossman, Sloan and Goodwin, Justices.

SLOAN, J.

This was an action to recover on a hail insurance policy. Defendant admitted that hail damage had occurred to plaintiff's pear crop but denied plaintiff's

proof of loss as to the amount of the damage. Plaintiff was awarded a verdict and judgment. Defendant appeals.

There are 30 assignments of error. Most of them, however, are based upon the single contention that plaintiff did not use the correct basis to determine its loss. The other assignments will be mentioned later.

The policy in question was one designated as a "value" policy. The policy itself disclosed the value of the insured crop. The conditions of this form of policy provide that when hail damage occurs the dollar value of the loss is determined by a formula that fixes a percentage of loss to the predetermined value. The policy also provided that the loss shall be determined at the maturity of the crop by the examination of representative samples. The loss formula is applied to the representative sampling and the percentage of loss then applied to the entire crop. The loss was to be determined by the reduction in the grade of the pears. The policy provided that the grades would be "* * * the grades published by the Horticultural Department of the State * * *." In Oregon, the State Department of Agriculture establishes the grades which are: extra fancy, fancy and cull.

In this case the hail storm occurred in May 1960, when the fruit was still quite small. At the time of maturity defendant sent adjusters to examine the crop and to attempt to determine the amount of the loss. Plaintiff was dissatisfied with the basis used by the adjusters and with the dollar value of the loss determined by them. Plaintiff then obtained the services of four men who, if their testimony is to be believed, were well qualified to judge the cause and amount of damage. Defendant admitted that its first adjustment was wrong and later caused a second team of adjusters

to make an additional appraisal of the damage. They found the damage to amount to $1,110 and no more. Plaintiff's appraisers arrived at a loss of $20,758.

Defendant contends that plaintiff's appraisers did not properly interpret and follow the regulations of the Department of Agriculture, and that plaintiff's evidence of loss should not have been admitted into evidence. Because of the limited legal questions involved in this case, we will not expand this opinion to the length necessary to detail the conflicting contentions as to the interpretation of the regulations.

It is sufficient to mention that pears suffer in loss of grade by an affliction designated as russeting. Russeting appears to be a natural occurrence to some species of pears and is otherwise caused by hail, insects, some chemical sprays and other causes. The regulations provide certain specifications for determing grading differentials by russeting alone, regardless of cause. Defendant contended that any russeting found on the pears should have been graded as russeting damage only, without regard to whether the russeting was caused by hail or some other cause. Other specifications provide for damage caused directly by hail. However, plaintiff's evidence, if believed, would prove that russeting caused by hail is readily distinguishable from russeting created by other causes and that the hail russeting directly affects the grade of the pears. Plaintiff, when asked to describe the hail damage he relied on, testified:

"A Well, the pears had various types of hail damage on them. They had penetrations—definite penetrations of the pear; they had an extremely rough sort of scurvy russet that in some cases deformed the shape of the pear; they also had a certain amount of scratching

> and russeting along with it. We peeled some of them and found a certain amount of corking underneath the russet."

The Department of Agriculture regulations required an exercise of judgment upon the part of the grader when he arrives at the grade level of the pears.

For example, the regulations define Extra Fancy summer pears in this general language:

> "(1) *Extra Fancy* shall consist of pears of one variety which are handpicked, mature, clean, well formed, sound, free from damage caused by bruises, limbrubs, sprayburn, sunscald, hail marks, drought spots, russeting, broken skin, codling moth injury, hard and other damage caused by disease, insects, mechanical or other means, except that slight blemishes and russeting characteristic of the variety shall be permitted."

The regulations define "Free from damage" as:

> "(5) 'Free from damage' means that the pear shall not be injured to an extent apparent in the process of proper grading and handling, and from damage caused by black discolorations or any damage that arrests the growth of the pear."

 The lack of any exact specifications for grading required a discretion in the graders. The real test of the correctness of the grade, of necessity, had to be determined by the skill, experience and knowledge of the graders. Wigmore, Evidence (VII 3d ed) § 1918, et seq. This was not a case where mechanical application could be made to precise regulatory specifications. In this respect we cannot agree with defendant's theory as to the application of the grading regulations. And we are of the further opinion that, in this case, it was for the jury to determine whether or not the graders used by both parties were qualified and if their testi-

mony was trustworthy. Defendant did not except to any of the instructions given by the court. We must assume that defendant was satisfied with the manner in which the court submitted the regulations to the jury. The jury's measurement of the standards of grade against the evidence of the witnesses was not unlike other cases in which a jury must measure evidence against an indefinite standard, i.e.: intent, disability, the basic rule, valuation and the like. Defendant submitted several requested instructions which would have submitted only its theory of grading to the jury. We think the requested instructions were not correct. And, if given, would have been inconsistent with the instructions given.

Defendant relies on *State Highway Com. v. Arnold et al,* 1959, 218 Or 43, 341 P2d 1089, 343 P2d 1113. In that case the opinion given by the expert, and rejected by this court, was based upon a more precise mathematical calculation. No judgment was involved. To the extent that the cases are analogous, *Highway Commission v. Nunes et al,* 1963, 233 Or 547, 379 P2d 579, is more significant. In the *Nunes* case it is apparent that the evidence of the expert therein approved would include an exercise of judgment, skill and knowledge.

█ In order to submit the claimed amount of damage to the jury it was necessary for the witnesses for both parties to make certain mathematical calculations. The evidence and the contentions of the parties were such that, in reality, the jury was obliged to find the amount of damage claimed by defendant of $1,110 or the amount determined by plaintiff's witnesses. The jury was largely called upon to judge the good faith and ability of the witnesses. There was little else the jury could have done except by guesswork. Our reading of the evidence makes it apparent that the jury would

have been justified in finding the defendant's witnesses were not only unqualified but were confused. Defendant's assignments directed to the introduction of evidence and as to the motions for directed verdict must be denied.

■ A more serious question is presented by defendant's assignments relating to the refusal of the trial court to require plaintiff to produce records of the amount of pears actually harvested and sold and other related records. The rulings were made prior to trial upon an attempted discovery procedure and during the trial when defendant attempted to elicit evidence of the same kind. The court ruled that the evidence, if produced, would not be relevant or material. The ruling was based upon the language of the insurance contract, before mentioned, that the loss should be determined at the time of the maturity of the crop. In this case, we think it would have been preferable for the court to have required the records to have been produced and then to have made the determination of relevancy. We think the trial courts should be liberal in ruling upon a motion permitted by ORS 41.615. It requires no citation to the authorities to recognize that this is the trend in all courts and by statutes and rules.

However, in this case we think it was not error to deny the motions. The policy, being a value policy, specified the basis for determining loss and sales records were not a part of the policy requirements. And, in this case defendant contended throughout the case that the loss, in no event, would exceed the amount of $1,110. Defendant's theory, as presented by evidence to the jury and by motions to the court, sought to limit plaintiff's recovery to that precise amount. Accordingly, defendant was obliged to stand or fall

by that defense. There is nothing in the record to demonstrate that the unproduced records would have helped defendant establish that the damage could not have been more than the amount claimed by defendant.

■ Nor would the records have been of aid to defendant in its argument that plaintiff's experts did not correctly interpret the regulations in issue. Defendant, by its policy, chose the time and method for determining loss. As before stated, loss was to be determined by the estimated percentage of loss to the predetermined value of the crop at the time of maturity. Loss of market or sales value was not to be considered and was, therefore, not material.

We have examined the other assignments of error and have concluded that the trial court correctly ruled on each challenge made.

The judgment is affirmed.