Argued September 7, 1973, affirmed January 17, 1974

# KUBECK, *Appellant, v.* CONSOLIDATED UNDERWRITERS, *Respondent.*

517 P2d 1039

*Donald H. Joyce,* Portland, argued the cause and filed a brief for appellant.

*George M. Joseph,* Portland, argued the cause for respondent. With him on the brief were James G. Breathouwer, and Bemis, Breathouwer & Joseph, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

Plaintiff brought this action to recover under the theft loss provision of his automobile insurance policy issued by defendant. Defendant's answer alleged that the policy had been issued in reliance on plaintiff's material misrepresentation that the car in question was a standard 1969 Ford Fairlane. In fact, the automobile was a high performance 1969 Ford Fairlane Cobra which defendant contended it would not have insured had it known the true facts. The court

sitting without a jury granted judgment for defendant, and plaintiff appeals.

■ The two assignments of error question the sufficiency of the evidence. Plaintiff offered no evidence other than his own testimony. There is some conflict in the testimony. On disputed facts, we view the evidence in the light most favorable to the defendant. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199, 1202 (1973).

In June of 1971 plaintiff purchased a 1964 Chevrolet Corvette and requested insurance coverage from defendant. Defendant, through its agent, informed plaintiff that defendant would not insure the Corvette because it was a high performance vehicle.

On or about July 22, 1971, plaintiff was shopping for another automobile at Northwest Super Stock, a retailer specializing in high performance cars. He selected a 1969 Ford Mustang with a 428 cubic inch engine and a four-speed transmission. He called his insurance agent to determine whether the agent could issue a policy on the car. The agent replied that an insurance policy could not be issued since that particular Mustang was considered a high performance vehicle.

On the same day, plaintiff looked at another automobile on the lot at Northwest Super Stock. The car was a 1969 Ford Fairlane Cobra with a four-speed transmission. Plaintiff testified that he did not know the size of the engine and that a salesman had informed him that the engine was smaller than that of the Mustang. Plaintiff decided to buy the car and on the following day arranged for automobile insurance through defendant's agent.

Defendant's insurance agent requested a descrip-

tion of the car so plaintiff called the car dealer from the agent's office and obtained the vehicle serial number, which he gave to the agent as 9K450148685. Defendant's agent advised the defendant to add coverage under plaintiff's policy for a

"1969 Ford Fairlane 2dr Htp 289 cub
S# 9K450148685
LP# MDF173."

On the following day, July 24, 1971, plaintiff took the car to a repair shop and had the engine rebuilt at a cost of approximately $700. Plaintiff testified that he then learned the vehicle was equipped with a 428 cubic inch engine.

On August 29, 1971, the car was stolen. When the police recovered the vehicle it was "stripped" of all valuable parts, including the engine and transmission. Plaintiff submitted a claim for the loss but defendant refused payment, stating "this risk [a high performance vehicle] would not have been accepted, had the company been made aware of all the material facts."

There was a conflict in the evidence concerning plaintiff's representations of the size of the Cobra's engine to defendant. Plaintiff testified that he did not know the size of the engine and that defendant's agent stated, "I'll put 289 [cubic inches] on this."

Defendant introduced evidence which demonstrated that a 428 cubic inch engine was standard equipment on a 1969 Ford Fairlane Cobra. Defendant also introduced plaintiff's signed statement of the theft loss in which plaintiff stated, "I originally had thought the Cobra had a 289 engine but after arranging to buy it, discovered it was equipped with a 428 [cubic inch en-

gine] * * *. I told him [defendant's agent] that the car I was getting was simply a 1969 Ford Fairlane * * *. I told my agent that it had the 289 engine because that's what I thought at the time and there was no problem insuring it. I didn't find out until later the next day that the car actually had the 428 engine and I didn't think to call my agent back and advise him of this." Defendant also elicited plaintiff's admission that he knew the car was a Cobra when he bought it.

The trial court found "that the policy of insurance which is the subject of this action was procured by plaintiff through knowing misrepresentation of a material fact, which misrepresentation was relied upon by defendant, being otherwise ignorant of the truth, and but for which defendant would not have issued said policy, * * *."

The first assignment of error states, "The court erred in finding that the policy of insurance which was the subject of this action was procured by the plaintiff by a knowing misrepresentation of a material fact."

We believe that this assignment is without merit. There was evidence that plaintiff was familiar with high performance vehicles and that he purchased his car from a retailer specializing in high performance vehicles. Defendant's agent had previously refused to insure plaintiff's Corvette automobile and Ford Cobra Mustang which he wanted to purchase, both of which were high performance vehicles. Plaintiff's car bore the emblem of a Ford Cobra, and plaintiff realized that he was buying a Cobra. It seems unlikely that a person interested in high-powered automobiles would spend $2,000 for a car and $700 on the engine without knowing the size of the engine. According to plaintiff's signed statement, he had told defendant's agent that the engine

had only 289 cubic inches "because that's what I thought at the time * * *." Under these circumstances, the trial court was free to believe that plaintiff did in fact know that the automobile was a high performance vehicle with an engine larger than 289 cubic inches and that plaintiff had misrepresented the engine's size to defendant in order to obtain insurance. The state of a man's mind is a fact, and a statement that one has no knowledge of a certain material fact when one possesses such knowledge is a misrepresentation of a fact. *Cf. Hansen v. Holmberg*, 176 Or 173, 156 P2d 571 (1945) (false predication or expression of opinion). See also, 2 Restatement of Contracts § 471. Plaintiff's testimony that he told defendant's agent that he did not know the true size of the engine and that the agent independently described the vehicle's engine as a 289 on the policy application is that kind of evidence which a finder of fact may disbelieve even in the absence of contradictory evidence. Plaintiff was the only witness to testify on behalf of plaintiff. It is obvious, from the record, that the trial court doubted the credibility of plaintiff's testimony. *Cf. Coleman v. Meyer*, 261 Or 129, 135-36, 493 P2d 48, 51 (1972), where this court held that the trial court could properly disbelieve the defendants' sworn statements that they did not know that if they failed to answer a complaint a default judgment could be taken against them. There is substantial evidence to support the trial court's finding.

The other assignment of error states, "The court erred in finding a misrepresentation was relied upon by the defendant who was otherwise ignorant of the truth." Plaintiff claims that the serial number furnished to defendant either informed defendant that the vehicle in question was a Cobra or furnished facts sufficient to require further inquiry by defendant.

At trial, defendant's witness and underwriting supervisor testified that the serial number furnished to defendant—9K450148685—was inaccurate in that the fifth figure, "0," does not designate an engine size; that the letter "Q," rather than "O," would have designated a high performance Cobra with a 428 cubic inch engine; and that the figures "45" indicate the vehicle's body style. She also stated that plaintiff's policy application indicated that the vehicle for which insurance was sought was a 1969 Ford Fairlane with a 289 cubic inch engine; that the policy was "processed by an endorsement clerk, who saw the 289 and processed it." It was not brought to the attention of the underwriting supervisor.

Due in part to the negligence of its employee and in part to the erroneous serial number, defendant did not discover the accurate serial number description but, instead, relied on plaintiff's misrepresentation. The issue posed by these facts is whether defendant's reliance on the misrepresentation was justifiable.

■ An insurer is permitted to avoid compliance with its own insurance policy where the insured has procured the policy by means of fraud. ORS 743.042 (1) states:

"(1) * * * Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless either:

"(a) Fraudulent; or

"(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer."

■ One of the basic elements of fraud is reliance. However, the cases make clear that not reliance alone but reliance where there is a right to rely will relieve

a contracting party from the fraud of the other. *See Johnson et ux v. Cofer,* 204 Or 142, 281 P2d 981 (1955), for discussion of this rule.

■ Under these circumstances, the trier of the facts resolves the conflicting claims of the party who has been fraudulent and the party who has been careless in believing the fraudulent representation. *Melgreen et ux v. McGuire, Inc. et al,* 214 Or 128, 137 P2d 1114 (1958); *Horner v. Wagy,* 173 Or 441, 454, 146 P2d 92 (1944). This court has elected to protect the rights of the latter rather than permit the fraudulent party to achieve his purposes by asserting that the representee was guilty of negligence in believing the fraud. *Lilienthal v. Kaufman,* 239 Or 1, 15, 395 P2d 543, 549 (1964); *Outcault Advertising Co. v. Jones,* 119 Or 214, 239 P 1113 (1925); *Krause v. Eugene Dodge, Inc., supra* at 501. In *Heverly v. Kirkendall,* 257 Or 232, 237, 478 P2d 381, 383 (1970), this court held that a fraud-feasor will not be heard to assert that his victim was negligent in relying on the misrepresentation. The rationale for this rule was explained by this court in *Johnson et ux v. Cofer, supra* at 150:

"'* * * '* * * The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. It has also been frequently declared that as between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing.' [Citations omitted.]"

■ We see no reason to depart from these well-established rules. There was substantial evidence to support

the trial court's finding that defendant relied on plaintiff's misrepresentation and that the reliance was justifiable.

Affirmed.