Argued and submitted July 18, affirmed December 15, 1980,
reconsideration denied January 22,
petition for review denied March 24, 1981 (290 Or 652)

CRAWFORD,
*Appellant,*
*v.*
STANDARD INSURANCE CO.,
*Respondent.*

(No. A7806-09177, CA 15297)

621 P2d 583

Peter L. Barnhisel, Corvallis, argued the cause for appellant. With him on the brief was Fenner, Barnhisel & Morris, Corvallis.

John P. Conley, Portland, argued the cause for respondent. With him on the brief was Hardy, McEwen, Newman & Hanna, Portland.

Before Richardson, Presiding Judge, Schwab, Chief Judge, and Thornton, Judge.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a judgment entered on a jury verdict for defendant on its affirmative defense that the mortgage insurance policy in question was vitiated by plaintiff's deceased husband's fraudulent representations on the application for insurance that he was in good health, when in fact he suffered from a terminal form of cancer. Plaintiff raises four assignments of error:

1)  The failure of the trial court to instruct the jury, pursuant to plaintiff's requested instruction, on the issue of reasonable reliance;[1]

2)  The trial court's instruction that, as a matter of law, defendant had a right to rely on all material statements contained in the application;

3)  The trial court's allegedly undue emphasis on plaintiff's burden of proving waiver when reinstructing the jury on that point; and

4)  The failure to submit the issue of estoppel to the jury.

There is no dispute as to the essential facts:

During the latter part of 1976, decedent applied twice to defendant for mortgage insurance under a group policy set up by decedent's employer. On the first application form, seeking life and disability insurance, he answered in the negative questions concerning whether he was under a doctor's care or had certain diseases including cancer, although he knew the answers were false. Because the requested amount of the policy was $50,000, defendant investigated decedent's health by inquiring at the Medical

---

[1] The requested instruction read as follows:

"To establish misrepresentations sufficient to absolve an insurance company from responsibility under a life insurance contract, all of the following facts must be established by a preponderance of the evidence:

"1) The insured made false representations in the insurance application;

"2) The insurance company was justified in relying upon representations and so relied;

"3) The Company would not have issued the insurance policy if it had known the facts."

Information Bureau (MIB), a service operated by insurance companies to exchange relevant information concerning the health of persons who apply for insurance. The inquiry brought a reply indicating that a person matching decedent's name, date and place of birth and region of residence had cancer and had been operated on within a year. MIB rules require that, before a client can make a request for the source documents of MIB's information, it must first require a physical examination of the applicant or contact the applicant's doctor who can verify the status of the person's health. A request was sent to decedent to furnish the name of his physician. He sent back the names of two doctors, one of whom stated, upon inquiry, that he had never seen decedent and the other that he had not seen decedent since he performed a complete pre-employment physical in 1973, and that decedent was then in good health.

Based on this information, the underwriter concluded that the information furnished by MIB referred to someone other than decedent but with the same name and other vital statistics. The underwriter approved the application without making further inquiry. This application was then submitted to the supervisor, who also approved it. For reasons which do not appear from the record, no policy or policies were ever issued on the first application. Decedent then sent his second application to defendant, seeking only life insurance. The same inquiry process followed, with identical responses from MIB, the decedent and the physicians. The underwriter noted on this application that cancer was suspected based on the MIB response and did not note approval. The application was taken up with the supervisor, who subsequently approved the policy.

The policy was issued on March 4, 1977, retroactive to the application date. Premiums were paid regularly until decedent's death on August 28, 1977. Plaintiff filed a claim for benefits under the policy, which were denied. The amount of the premiums was refunded to plaintiff.

Plaintiff's first two assignments of error are interrelated. The court's instructions applicable to defendant's reliance are as follows:

"An insurance company is entitled to rely upon all statements made by an applicant for insurance and upon all the information furnished by the applicant in connection with the application insurance forms.

"In processing such application it may assume that all information furnished by the applicant is true and correct.

"The fact that an insurance company performs an investigation of the application does not in itself lessen the right of the insurance company to rely upon the information furnished by the applicant. Knowledge acquired by investigation which is sufficient to lead a prudent person to inquire about the matter when it could be ascertained conveniently constitutes notice of whatever the inquiry would have disclosed and will be regarded as knowledge of the facts.

"The plaintiff has alleged that the defendant waived his right to rely upon the misrepresentations because it knew or had sufficient information to know that the applicant had made misrepresentation [sic] because it accepted the application for insurance and accepted premiums paid for the insurance and retained the premiums paid.

"A waiver occurs when someone voluntarily and intentionally relinquishes a known right. A waiver can only be made when a party has full knowledge of all the facts. In order for you to find that the defendant waived his [sic] right to rely upon the representations made in the application for insurance, you must find that it knew that the statements in the application of material facts were false, and with such knowledge it approved the application and entered into an insurance contract.

"The burden is upon the plaintiff to show you by a preponderance of the evidence that the defendant waived its right to rely on the representations in the application for insurance."

■■  In an action to recover benefits allegedly due under an insurance policy, the insurer may avoid its obligation to pay by showing fraud on the part of the insured. ORS 743.042(1)(a). In order to meet its burden of establishing fraud, the insurer must prove it relied on the representations contained in the application for insurance. There are three aspects to this element: reliance in fact; reliance that was justified in light of the facts known to the insurer at the time; and the insurer's right to rely on the representations. *Williams v. Collins,* 42 Or App 481, 486, 600 P2d

1235 *rev den* 288 Or 173 (1979). The first two aspects are questions of fact; the last is a question of law. *Briscoe v. Pittman,* 268 Or 604, 610, 522 P2d 886 (1974).

■ An insurer may show it approved the policy in the ordinary course of business which, when coupled with proof that the application contains false representations but for which the insurer would not have issued the policy and the insurer's legal right to rely on the application information, is sufficient to make out prima facie the element of reasonable reliance. The insured then has the burden of going forward with evidence that the insurer had, or was chargeable with, knowledge of facts which revealed the falsity of the representations prior to reliance. To meet its burden of persuasion, the insurer must then establish by a preponderance of the evidence that it had no such knowledge or at least that its failure to discover the true facts was attributable to mere negligence. *See Kubeck v. Consolidated Underwriters,* 267 Or 548, 554, 517 P2d 1039 (1974).[2]

■ There was evidence here that defendant had information from MIB that decedent had cancer which had been operated on in 1975 or 1976. Decedent furnished names of two doctors, one of whom had not seen him and one who saw him in 1973. The jury could have found that defendant should have made greater effort to determine whether its ostensible explanation for the MIB information—that it pertained to another person with decedent's name, date and place of birth—was reasonable. In these circumstances, an instruction that defendant has the burden of establishing justifiable reliance was appropriate.

The trial court correctly instructed the jury that defendant had the right to rely on the representations contained in the application. *Kubeck v. Consolidated*

---

[2] In *Kubeck,* the insured gave a false number in the course of representing that the car to be insured was not a high performance vehicle upon which the insurer would not issue coverage. Had the underwriter checked the significance of the digits in the serial number given, however, it could have discovered the nature of the car. Our Supreme Court held that failure to check the number, though negligent, did not eliminate the insured's fraud defense. In this case, the underwriter actually checked the information furnished by MIB and had determined its significance.

*Underwriters, supra,*[3] *Johnson et ux v. Cofer,* 204 Or 142, 149-50, 281 P2d 981 (1955). The instructions fall short, however, of informing the jury that defendant must have relied in fact and that such reliance must have been justifiable.

■    Assuming, however, that, in the abstract, the instructions were an inaccurate statement of the applicable law, we conclude that any error in instructing the jury that plaintiff had the burden of proof with respect to the quantum of the insurer's knowledge at the time it issued the policy was invited by the way the parties pleaded and tried the case, and that plaintiff is therefore estopped from asserting the error as grounds for reversal. *Sterling v. City of Albany,* 276 Or 403, 406-07, 555 P2d 23 (1976). The complaint alleged that a contract of insurance was issued on the life of plaintiff's husband and that defendant, by refusing to pay benefits, was in breach of its terms. Defendant admitted issuing the policy but asserted that the policy was not valid because it had been issued without knowledge of the fraudulent statements made by plaintiff's husband in his application. Plaintiff denied this allegation. At this point, the issue of whether defendant knew or should have known about the state of the husband's health was joined, and no further pleading on plaintiff's part was necessary. However, plaintiff then created a significant problem by affirmatively alleging that (1) defendant waived its right to rely and/or (2) was estopped from relying on her husband's misrepresentations because "it knew, or had sufficient information to know" of the state of her husband's health when it issued the policy. By this pleading, plaintiff undertook to prove defendant knew the true facts at the time of issuing the policy.[4] *See* ORS 41.240.

---

[3] Contrary to defendant's contention, we find nothing objectionable about listing the elements of a cause of action with the request that each element be considered a different instruction. The fact that the trial court may, as it did in this case, instruct the jury as a matter of law that one of the elements is proved does not taint the accuracy or adequacy of the remainder. *Cf. Beglau v. Albertus,* 272 Or 170, 179, 536 P2d 1251 (1975) (requested instruction based on statute numbers too unwieldy because it required court to edit on-the-spot irrelevant subsections and cross-references from statutory language).

[4] If plaintiff had agreed that defendant had no knowledge of the misrepresentations prior to issuing the policy, but contended that it *subsequently* acquired

Plaintiff's assignment of error is that the trial court erred in failing to give her requested instruction that a fraud defense entails a showing that defendant *reasonably relied* on the representations in the application for insurance. The trial court did instruct generally that each party had the burden of proving "any claim or contention made in their respective pleadings * * *." On the facts of this case, to instruct the jury that defendant must prove it *reasonably relied* on the misrepresentations would have been tantamount to instructing that defendant had to show it had, or was chargeable with, no knowledge of the false statements in the application.

Plaintiff requested a waiver instruction in part as follows:

"Here Plaintiff contends that after her husband had filed the insurance application Defendant obtained knowledge that the application may have contained misrepresentations, and thus had a right to refuse to issue insurance at that time. However, Plaintiff is contending, that Defendant knowingly elected to issue the insurance policy, and accept premiums, and to waive any right it had to cancel the policy.

"To establish waiver, the party alleging it must prove that the insurance company had knowledge of sufficient facts to put it on inquiry, but intentionally waived its right of cancellation."

Although the instruction given was not the precise one requested, the court did allocate to plaintiff the burden of proving waiver and, consequently, the quantum of defendant's knowledge of the misrepresentations at the time it issued the policy. To have given plaintiff's reasonable reliance instruction as well would have informed the jury that defendant had a similar burden. Such an instruction would have created an inconsistency, and the court justifiedly declined to give it. *Oregon Orchards v. Ins. Co. of N.A.,* 239 Or 192, 197, 397 P2d 75 (1964).

knowledge and continued to accept premiums, a pleading of waiver of defendant's right to rescind the contract would have been required. Similarly, if plaintiff were unsure as to just when the knowledge of falsity was acquired, a waiver pleading would have been appropriate as an alternative pleading in case the defendant had learned the true facts after issuance. Here, however, plaintiff's pleadings, evidence and requested instructions all assume that defendant knew of the misrepresentations and issued the policy anyway.

■     It follows, with respect to plaintiff's third assignment of error, that any prejudice which resulted from reinstructing the jury on the issue of waiver was similarly a product of the invited error. It was within the court's discretion to reinstruct the jury on this confusing point.

■     Turning to plaintiff's fourth assignment of error, failure to instruct the jury on the issue of estoppel, we find no error. To constitute an estoppel, there must have been a false representation by the insurer made with knowledge of the true facts by which the other party, being ignorant of the truth, was induced to act, and did in fact act. *Earls v. Clarke,* 223 Or 527, 530-31, 355 P2d 213 (1960). The issue of whether the insurer issued the policy despite knowledge of the facts (thereby making a "false" representation that plaintiff was covered) is, as in the case of waiver discussed above, identical to the issue of justifiable reliance. In this context, estoppel was redundant and an instruction on it was properly denied.

Affirmed.