**Nancy KRAUS, Plaintiff-Appellant,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.**

No. 85–3920.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 1986.

Decided Sept. 8, 1986.

William B. Wyllie, Salem, Or., for plaintiff-appellant.

Thomas W. Brown, Portland, Or., for defendant-appellee.

Before WRIGHT, GOODWIN and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Although appellant raises several arguments on appeal from an adverse jury verdict, we conclude that there is but one question for us to consider. We state it thus: In an action by a beneficiary on a life insurance policy of $100,000, did the district court err in its instructions to the jury and specifically in its failure to instruct that the insurer had a duty to investigate the facts surrounding the application for insurance?

The plaintiff offered and the court refused this proposed instruction:

> If you find that the application for life insurance is, on its face, incomplete, then Prudential could not reasonably rely on it and Prudential had a duty to inquire further. Prudential is charged with knowledge of any information which would have been produced by such a further inquiry.

In support of the request and again .on appeal, plaintiff cited *Rutherford v. Prudential Insurance Co.,* 234 Cal.App.2d 719, 44 Cal.Rptr. 697 (1965).

## BACKGROUND

Fifteen months before he died, Alvaro Gonzales, a 45–year-old man, applied for a policy of $100,000 on his life, naming as beneficiary Nancy Kraus with whom he was living. Kraus also applied for a Prudential policy in the same amount, naming Gonzales as her beneficiary. When Gonzales died in June 1983, Kraus made a claim on Prudential, who denied the claim contending that the insured had made material misstatements or omissions in his application. His death occurred within the two-year contestable period in the policy.

Between November 1981 and March 1, 1982, when he applied for insurance on his life, Gonzales had abdominal pain, low back discomfort, weight loss of 15 pounds and the use of prescription drugs to relieve persistent pain. During that time, he was seen at a hospital in Salem where he complained of terrible pain in his left flank and stomach, and thereafter he was treated by five physicians.

Dr. Allen treated him, took tests and prescribed medication from December 10, 1981 until January 5, 1982. When Gonzales' symptoms became more serious and unresponsive to medication, she referred him to Dr. Buck, a gastrointestinal specialist. His impression was that the patient had a serious intestinal problem, possible small bowel disease or pancreatic cancer. Tests were not conclusive. Dr. Buck testified that Gonzales did have cancer but he had not told the patient so.

Next, Dr. Allen referred Gonzales to Dr. Stevens, an orthopedist, who made a complete examination, reviewed x-rays and was unable to make a diagnosis without further testing.

When the patient complained of continued severe pain, Dr. Allen referred to Dr. Ball at a Seattle clinic. Further studies were made there and Dr. Taft in Seattle performed an ERCP which revealed a mestastic pancreatic carcinoma on March 25, 1982. Death came on June 3, 1983.

The application for insurance certified to the truthfulness, accuracy and completeness of each answer. Gonzales made these statements:

(1) His weight had not changed more than 10 pounds in the past year.

(2) His weight had been the same for 10 years.

(3) He last consulted a physician, Dr. Allen, in November 1981, for a strained back and made a full recovery.

(4) He had never been seen or treated by a doctor for disease or disorder of liver, gallbladder, stomach, intestine, kidneys, bladder, genital organs or urinary tract.

(5) He had not seen or been examined by any other doctor within five years.

(6) He had a physical examination in 1978 with several tests taken by an unidentified doctor in Bellevue, Washington; "everything within normal limit".

(7) He now has no known sign of any physical disorder, disease or defect not otherwise referred to.

It was obvious to the jury, as it is to us, that Gonzales failed to disclose several significant facts. Drs. Allen and Buck testified that the answers given were not true. Even Kraus acknowledged that Gonzales had lost weight and that Dr. Allen was not the only or last doctor that he had seen in the past five years, and she admitted that he saw him for stomach pain, not a back strain.

Defense witnesses testified that, if Gonzales had answered truthfully, Prudential would have sought further information from the treating physicians. Issuance of the policy would have been postponed pending final diagnosis. There was nothing unusual in the application to trigger the need for further investigation, said the witnesses.

Kraus does not challenge any evidentiary ruling, the sufficiency of the evidence to support the verdict or the instructions given by the trial court. She argues only the failure to give her requested instruction No. 4.[1] It was refused, said the court, because it was inconsistent with Oregon law, was not supported by the evidence and incorrectly stated California law on which it was based.

ANALYSIS

The Oregon statute gives an insurer the right to rescind or avoid a policy where incorrect statements, misrepresentations, omissions or concealments of facts are done fraudulently or are material to the risk. ORS 743.042(1). No exception is provided for and no duty to investigate an application is stated.

In *Kentner v. Gulf Ins. Co.*, 297 Or. 470, 686 P.2d 339 (1984), the court noted that the purpose of the Oregon statutes is to discourage insurance fraud. The court held that that purpose would be thwarted by imposing high standards of proof or difficult scienter requirements. We too would thwart the legislative purpose by imposing an investigation requirement on insurers who receive applications with materially false information or with material information omitted.

Kraus cites only one Oregon case, *Bunn v. Monarch Life Insurance Co.*, 257 Or. 409, 478 P.2d 363 (1970). In *Bunn*, the insured made a complete disclosure and the *insurer's agent*, in completing the insurance application, misstated and omitted material facts. The court held that the insured, in that situation, should not be bound by his failure to read and correct the application form that was later sent to him. Here the record shows that the insurer's agent filled out the application form just as Gonzales told him to and that the agent read it back to Gonzales before both of them signed it. *Bunn* has no application here.

Not cited, except by Prudential, is *Kubeck v. Consolidated Underwriters*, 267

---

1. Kraus also assigns error to the court's refusal to give an instruction that said that Prudential could not cancel a policy for misstatements or omissions if the true facts would not have made the application less desirable. We agree with the trial court that this issue was adequately addressed in the materiality instructions.

Or. 548, 517 P.2d 1039 (1974). In *Kubeck*, the Oregon Supreme Court held that, under ORS 473.042(1), "[a]n insurer is permitted to avoid compliance with its own insurance policy where the insured has procured the policy by means of fraud." 517 P.2d at 1041–42. Although an insurer has to show justifiable reliance, the court added that not even an insurer's negligence in relying on the fraudulent representations will help the fraud-feasor. 517 P.2d at 1042.

We find that, under Oregon law, an insurer has no duty to investigate where the application is "incomplete on its face," unless the omissions are so obviously material that reliance on the incomplete application would be reckless. *See Kubeck*, 517 P.2d at 1042. *Cf. State Farm Fire and Casualty Co. v. Sevier*, 272 Or. 278, 537 P.2d 88, 94–95 (1975) (en banc) (declining to decide whether, absent actual knowledge of fraud, an insurer has the duty to investigate before issuing automobile liability insurance.). No witness testified that Gonzales' application was obviously missing information. Since neither the law nor the evidence supported it, Kraus' proposed instruction was properly refused.

Prudential characterizes the appeal as frivolous and asks that we allow attorneys fees and double costs as sanctions. While the appellant relies on case authority which is not consistent with Oregon law, we cannot say that her appeal is wholly without merit. Sanctions are denied. Appellee will recover its costs.

AFFIRMED.