Argued and submitted May 18, 2001, affirmed February 27, 2002

Frances STORY,
*Appellant,*

*v.*

SAFECO LIFE INSURANCE COMPANY,
a Washington corporation,
*Respondent.*

98CV0984CC; A108156

40 P3d 1112

Mustafa T. Kasubhai argued the cause and filed the brief for appellant.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Robert B. Miller and Bullivant Houser Bailey, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Linder, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff is the beneficiary of a life insurance policy that her husband had with defendant. Defendant refused to pay plaintiff the amount owed under the policy when her husband died, on the ground that her husband had materially misrepresented his medical condition in his insurance application and that the misrepresentation relieved defendant of the obligation to pay the benefits that were otherwise due under the policy. Plaintiff sued defendant on the policy, and a jury returned a verdict in plaintiff's favor on it. The trial court granted defendant's motion for a judgment notwithstanding the verdict and entered judgment for defendant. Plaintiff appeals, assigning error to the trial court's grant of defendant's motion. We affirm.

■ We view the facts in the light most favorable to plaintiff, the party in whose favor the jury returned its verdict. *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977). In June 1994, plaintiff's husband applied for a life insurance policy with defendant. The application for the policy contained various questions about the applicant's current health and prior medical history. On the application, the insured reported that he was 64 years old and 5' 8" tall and that he weighed approximately 250 pounds. He listed Dr. Fred Black of Roseburg as his personal physician. On question 9 on the application, the insured answered "yes" to whether he had been treated for or diagnosed with problems associated with the circulatory system, such as chest pain, high blood pressure, heart attack, or murmur. He elaborated on this question in the "details" portion of the application, explaining that he had been taking medication to control his high blood pressure since the 1970s and that the condition was under control. On question 10, the insured indicated that he had not "had any other impairment, sickness or diagnostic procedures such as X-ray, EKG, laboratory tests" in the previous ten years. He also denied having been treated for "heart disorder, stroke, cancer, AIDS or had such treatment recommended by a physician or other medical practitioner" in the previous two years.

On the second part of the application, which was pre-pared by a medical examiner, the insured indicated that he had never been diagnosed with or treated for "chest pain or discomfort from any cause" and had not, in the previous ten years, been diagnosed with or treated for coronary artery disease, heart attack, chest pain, abnormal heart rate or rhythm, or heart murmur. He again answered "yes" to whether he had high blood pressure or hypertension. Under the "details" section of the application, the insured explained that from 1989 through the summer of 1993 he had seen a physician, Dr. Green, at the Veterans' Administration Hospital in Roseburg twice a year for his high blood pressure. The insured also described the medication that he was taking to control his blood pressure and reported that he had had chest x-rays but no EKGs. He also listed Dr. Black as his personal physician on that part of the application. Finally, the insured reported that his mother had died at age 55 from a heart attack.[1]

Before approving the application, defendant subjected the insured to an EKG and an analysis of his blood. The results of the EKG indicated a possible old myocardial infarction, and the examiner recommended an increase in the insured's premium rates if it was appropriate in light of the insured's other medical history. The blood analysis showed that the insured's cholesterol and triglyceride levels were higher than normal.

Defendant also requested and received the insured's medical records from Dr. Black, but it failed to request or obtain any records from Dr. Green at the VA hospital. Defendant eventually approved the life insurance policy at a 50 percent increased premium to account for the insured's health.

In March 1995, less than a year after defendant issued the policy, the insured died. Plaintiff sought payment of the policy benefits from defendant. After the insured's death, defendant obtained the insured's medical records from

---

[1] On part one of the application, the insured reported that his mother had died at age 70, and he gave no explanation for her death. Neither party has addressed the discrepancy in the insured's statements about his mother's death. Whatever the explanation, the discrepancy would not change the outcome of the case.

the VA hospital in Roseburg. Those records indicated that, before defendant issued the policy, the insured had complained to Dr. Green of chest pains, had had an EKG, and had been diagnosed with and treated for coronary artery disease. Defendant therefore denied plaintiff's claim, and plaintiff sued.

At trial, plaintiff's insurance expert testified that, based on the information that defendant had before issuing the policy, it was a virtual certainty that defendant knew, or at the very least should have known, that the insured had coronary artery disease. In response, the manager of defendant's individual new business department testified. He stated that the information that defendant had when it issued the policy indicated only that the insured had risk factors for coronary artery disease, not the disease itself. Defendant took those risk factors into account by increasing the premium by 50 percent but, had it known that the insured already had coronary artery disease, it would have increased the premium by 150 percent. Therefore, according to defendant, it relied on the insured's representations that he had never had chest pains and that he did not have coronary artery disease when it issued the life insurance policy.

At the close of the evidence, defendant moved for a directed verdict in its favor on plaintiff's claim on the ground that the evidence established as a matter of law that it had reasonably relied on the insured's representations about the condition of his heart when it issued its policy. The court denied the motion and submitted the case to the jury, which returned a verdict for plaintiff. Defendant subsequently filed a post-trial motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The court granted the JNOV motion and entered judgment accordingly. Plaintiff appealed.

On appeal, plaintiff argues that the court erred in granting defendant's JNOV motion because there is evidence in the record from which a jury could find that, before issuing the life insurance policy, defendant either knew or could easily have discovered that the insured's statements on the application were false. Hence, defendant could not rely on those statements in issuing the policy to the insured.

The legislature has specified in ORS 742.013 requirements that must be met for an insurer to rescind an insurance policy for misrepresentations made in an insurance application.[2] We have explained that in order

> "[t]o establish a right to rescind its insurance policy, [an insurer] must prove by a preponderance of the evidence that it issued the policy in reliance on [an insured's] false representations, which were material to the company's decision to accept the risk. * * * Scienter must be proven by evidence that [the insured] either knowingly made false representations, or recklessly made false representations without any knowledge as to whether they were true or false."

*Progressive Specialty Ins. Co. v. Carter*, 126 Or App 236, 241-42, 868 P2d 32 (1994) (citations omitted). Here, the trial court ruled as a matter of law that the insured's misrepresentations were material to the risk assumed by defendant. Plaintiff does not challenge that ruling. Furthermore, the only possible conclusion from the evidence in the record is that the insured made those misrepresentations either knowingly or recklessly. The case turns, therefore, on whether the evidence compelled a finding that defendant issued the policy in reliance on the insured's misrepresentations.

■■ In order to establish reliance, an insurer must show "reliance in fact; reliance that was justified in light of the facts known to the insurer at the time; and the insurer's right to rely on the representations." *Crawford v. Standard Ins.*

---

[2] ORS 742.013 provides, in pertinent part:

"All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts and incorrect statements shall not prevent a recovery under the policy unless the misrepresentations, omissions, concealments of fact and incorrect statements:

"(a) Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued;

"(b) Are shown by the insurer to be material, and the insurer also shows reliance thereon; and

"(c) Are either:

"(A) Fraudulent; or

"(B) Material either to the acceptance of the risk or to the hazard assumed by the insurer."

*Co.*, 49 Or App 731, 735, 621 P2d 583 (1980), *rev den* 290 Or 652 (1981). The first two requirements present factual issues, and the last requirement presents a legal issue. *Id.* at 736. To prove reliance in fact, the insurer must show "some evidence of a detrimental action or change in position." *Eslamizar v. American States Ins. Co.*, 134 Or App 138, 146, 894 P2d 1195, *rev den* 322 Or 228 (1995). Here, defendant presented evidence that, had it known about the insured's treatment for coronary artery disease, it would have issued the policy at a higher premium. Plaintiff does not challenge that evidence or argue that there was a factual issue about whether defendant relied on the insured's representations about his heart condition. Hence, there was no factual issue on the first reliance element.

We turn to whether there was a factual issue on whether defendant was justified in relying on the insured's representations. Generally, an

> "insurer may show [that] it approved the policy in the ordinary course of business which, when coupled with proof that the application contains false representations but for which the insurer would not have issued the policy and the insurer's legal right to rely on the application information, is sufficient to make out prima facie the element of reasonable reliance. The insured then has the burden of going forward with evidence that the insurer had, or was chargeable with, knowledge of facts which revealed the falsity of the representations prior to reliance. To meet its burden of persuasion, the insurer must then establish by a preponderance of the evidence that it had no such knowledge or at least that its failure to discover the true facts was attributable to mere negligence."

*Crawford*, 49 Or App at 736 (citation omitted). Thus, once an insurer makes a *prima facie* showing of reasonable reliance, the burden shifts to the insured to present evidence to show that the insurer either knew or can be charged with knowing that the representations on which the insurer relied were false. An insurer can be charged with knowing that the representations were false if it had information sufficient to put a reasonable person on notice that the representations were false and the information that it had would lead such a person to start an inquiry that, if carried out with reasonable

thoroughness, would confirm that fact. *See In re Webster's Estate*, 74 Or 489, 145 P 1063 (1915) (discussing "chargeable with knowledge" in the context of laches); *New York Life Ins. Co. v. Strudel*, 243 F2d 90, 93 (5th Cir 1957); Lee R. Russ and Thomas F. Segalla, 6 *Couch on Insurance* 3d § 82.17, 82-34 (1997). Once the insured meets its burden of presenting evidence on the insurer's knowledge, the insurer can still avoid liability on the policy if it can persuade the factfinder that it did not have the requisite knowledge or that its failure to discover the true facts was merely negligent. *Crawford*, 49 Or App at 736.

Here, plaintiff argues, in essence, that there was evidence sufficient to support a finding that defendant could be charged with knowing that the insured had made false statements on his application. According to plaintiff, when one considers the insured's age, weight, abnormal EKG, high cholesterol levels, long-standing treatment for hypertension, and family history of heart disease, the only plausible conclusion that can be reached is that the insured had coronary artery disease. Thus, his denial of that fact on the application was an obvious misrepresentation that put defendant on notice of the need to inquire further about the condition of the insured's heart. If defendant had conducted that inquiry with reasonable thoroughness, then defendant would have confirmed that the insured had misrepresented his condition.

We disagree. Knowledge that a person has many of the risk factors, or all of the risk factors, for a disease does not necessarily equate with knowledge that the person actually has the disease. Plaintiff did not establish that defendant knew that the insured had coronary artery disease, and so far as the evidence shows, everything that defendant knew was consistent with the insured's answers on the application. Knowledge that the insured had many of the risk factors associated with coronary artery disease was not in itself sufficient to put defendant on notice that the insured actually had coronary artery disease. Accordingly, we conclude that there was no evidence from which a jury could find that defendant knew facts that should have led it to inquire further into the insured's representations.

■ Plaintiff also contends that, once defendant began an investigation of the insured before it issued the policy, it became accountable for any information that it obtained or easily could have obtained from the investigation. Hence, defendant should be charged with knowing that the insured had been treated for coronary artery disease because that information, while not actually obtained by defendant, could easily have been obtained from the insured's medical records at the VA hospital.

■ In the absence of information that gives an insurer notice that an insurance applicant has misrepresented facts, an insurer has no obligation to investigate an applicant's representations. *See, e.g.*, *Kraus v. Prudential Ins. Co. of America*, 799 F2d 502, 505 (9th Cir 1986). Nonetheless, an insurer can be charged with knowing of the insured's misrepresentations if, pursuant to an independent investigation, it becomes aware of facts sufficient to give it the required notice. Here, plaintiff argues that defendant's investigation was sufficient to give it that notice, and a reasonably diligent search would have uncovered the insured's misrepresentations. Plaintiff's argument fails for two reasons. First, defendant's investigation did not disclose any facts that contradicted the insured's answers in the application. Hence, the investigation did not put defendant on notice about the insured's misrepresentations. Second, even assuming that the investigation gave defendant that notice, defendant presented uncontroverted evidence that it was, at most, negligent in failing to ascertain the true nature of the insured's condition. Mere negligence in discovering the facts concerning an insured's misrepresentations is not equivalent to knowledge of those facts. *See Crawford*, 49 Or App at 736.

■ After defendant made a *prima facie* showing of reasonable reliance, the burden shifted to plaintiff to present evidence that defendant knew facts that revealed the falsity of the insured's representations or that should have led it to learn that the representations were false. However, there is no evidence in the record on which to find that defendant had the requisite knowledge. Thus, plaintiff did not satisfy its burden, and there was no question for the jury to decide. The trial court did not err in granting defendant's JNOV motion.

Affirmed.