Argued and submitted April 14, reversed and
remanded June 16, reconsideration denied July 31,
petition for review allowed September 3, 1980

# UNITED STATES NATIONAL BANK OF OREGON,
### *Appellant - Cross-Respondent,*

*v.*

# FOUGHT, et al,
### *Respondents - Cross-Appellants.*

## (No. A7708-11180, CA 14150)

612 P2d 754

[635]

William M. McAllister, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Richard C. Josephson, Portland.

Daniel F. Knox, Portland, argued the cause for respondents - cross-appellants. On the brief were

Souther, Spaulding, Kinsey, Williamson & Schwabe, Kenneth E. Roberts and Ridgway K. Foley, Jr., Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This was an action by the plaintiff bank[1] against two certified public accountants. The trial judge entered judgment for defendants, and plaintiff appeals. The determinative issue is whether the plaintiff bank pled and proved that the defendants defrauded the bank. While the trial court found that the defendants' conduct was "on the very edge of fraud," the court held for the defendants because it determined that the plaintiff had neither pled nor proven the requisite intent to defraud. We find that the court erred as a matter of law by employing an incorrect definition of fraudulent intent,[2] and reverse.

---

[1] The complaint lists the bank as the sole plaintiff. However, at the beginning of the trial, the parties stipulated to the addition of another plaintiff, Investment Service Company, a wholly owned subsidiary of the bank. In their briefs, the parties refer to the (singular) plaintiff, or to the bank. We will follow this usage in this opinion.

[2] At trial, and on appeal, the parties also have debated the applicability of § 551 of the Restatement (Second) Torts (1977), which provides:

"(1)  One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2)  One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

"* * * * *

"(b)  matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

"(c)  subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

"* * * * *

"(e)  facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." (Emphasis added).

The bank was a creditor of Millers International, Inc. (Millers), a jewelry manufacturer and retailer. The defendants are accountants who had performed accounting and auditing services for Millers for several years.

By August, 1976, the bank had loaned large sums to Millers, Millers was in financial difficulty, and the loans were in default. As a result, the bank and the president of Millers, Mr. C. Kenneth Miller, signed an agreement under which Millers was to place all of its receipts in a bank-controlled cash collateral account. All checks written on the account had to be approved by the bank.

Lists of checks, to be approved by the bank, were prepared by defendants' employes and taken to the bank by Mr. Miller or defendant Jones. The bank had been told to rely on defendants for financial information.

In November, 1976, Mr. Miller began to divert funds from Millers and from the cash collateral account. He used at least some of these funds to pay bills for which he knew the bank would not approve payment. The defendants knew what Miller was doing. However, as the trial court found,

> "Despite this knowledge, defendants continued to prepare financial information and defendant Jones would personally present lists of checks for payment, without disclosing the unauthorized diversions. During this entire period of time, the defendants were aware of the terms of the letter agreement and the provision for deposits of Millers, Inc. receipts to the cash collateral account."

The trial court concluded that the section did not apply to this case because the defendants were not 'parties' to the transaction between Millers and the bank, because § 515 is a negligence provision, since the section uses the terms "duty" and "reasonable care," and because negligence could not form the basis of recovery by a third party against the accountants. *See Ultramares Corp. v. Touche,* 255 NY 170, 174 NE 441, 74 ALR 1139 (1931). Because of our disposition of this appeal, we need not resolve the question of the applicability of § 551.

The bank was unaware of the diversions until, in December, 1976, it discovered a discrepancy between cash receipts and deposits to the cash collateral account. A meeting was held in January, 1977, to investigate the discrepancy. Defendants attended this meeting, but they did not inform the bank that Miller was violating the agreement. Defendant Fought said that he "would look into" the matter of the discrepancy.

When the bank's accountants later examined the records of Millers, Inc., and reconciled the cash receipts to the deposits to the cash collateral account, they discovered a shortage of $105,706.67. This action followed.

In their cross-appeal, and for the first time in this case, the defendants argue that the trial court's disposition of the case may be justified because the bank's pleading was insufficient to state a cause of action for fraud.[3]

The bank's amended complaint describes the parties, the defendants' services as accountants and bookkeepers for Millers, and the cash collateral account agreement between Millers and the bank. The complaint alleges that the defendants knew of the agreement. The complaint outlines Mr. Miller's diversions from the cash collateral account. The complaint then recites that,

"* * *

"VIII

"The actions of C. Kenneth Miller alleged above were done with the full knowledge of defendants.

---

[3] Defendants' cross-appeal raises a second issue. In their answer, defendants alleged the affirmative defense of contributory negligence. The trial court sustained the plaintiff's demurrer on the basis that contributory negligence is not a defense to an intentional tort. *See Kubeck v. Consolidated Underwriters,* 267 Or 548, 517 P2d 1039 (1974). Defendants were given leave to present evidence in support of their affirmative defense if plaintiff failed to prove an intentional tort. On appeal, defendants argue that the demurrer should have been overruled because of plaintiff's reliance on § 551 of the Restatement, which defendants contend is a negligence provision. Because we resolve this case on the basis of plaintiff's cause of action for fraud, we need not reach this issue.

[639]

Notwithstanding this knowledge, defendant James Jones continued to present to plaintiff certified lists of checks and neither defendant disclosed to the Bank the actions of C. Kenneth Miller.

"IX

"During November and December of 1976 and January of 1977, plaintiff relied on the financial statements prepared by defendants and the lists of checks presented by James Jones as indicating that the only funds available to pay obligations of Millers International, Inc. were those in the cash collateral account and that all funds receivable by Millers International, Inc. were being deposited in the cash collateral account. Such representations were false when made and known by defendants to be false. Defendants further knew, or should have known, that plaintiff was relying on such representation.

"X

"As a result of defendants' acts, plaintiff has been damaged in the amount of $105,706.67."

The elements of actionable fraud consist of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757 (1950) (citations omitted); *see also Gardner v. Meiling,* 280 Or 665, 671, 572 P2d 1012 (1977); *Williams v. Collins,* 42 Or App 481, 485-486, 600 P2d 1235 (1979).

Defendants argue that the bank's complaint fails to state a cause of action for fraud because it does not allege that "the list of checks and receipts presented by defendants were *material,* were prepared with the *intent to defraud* the bank, that plaintiff had a *right to rely* on the representations, or that plaintiff was *ignorant of the falsity* of the statements." (Emphasis added). We agree with defendants that these elements of fraud

are not explicitly stated in plaintiff's complaint. However, until this appeal, defendants did not challenge the sufficiency of the complaint.[4] A complaint is liberally construed when it is attacked for the first time on appeal. *Williams v. Collins, supra,* 42 Or App at 487; *see also Fulton Ins. v. White Motor Corp.,* 261 Or 206, 219, 493 P2d 138 (1972). Moreover, as the Supreme Court has emphasized, while *Conzelmann* and other cases

> "* * * list nine requirements to sustain fraud, * * * they unduly fractionalize the essential elements. As an illustration, it is unnecessary to allege or find the hearer's ignorance of the falsity of a statement if it is alleged and found that the hearer relied upon it, because ignorance of the falsity of the statement *is necessary* to reliance. Also, while an allegation or finding of reliance is an allegation or finding of fact, whether or not a person *has a right* to rely is a conclusion which the law draws from facts and is not an allegation or finding of fact. * * *."
>
> *Briscoe v. Pittman,* 268 Or 604, 610, 522 P2d 886 (1974). (Emphasis in original.) *See also Williams v. Collins, supra.*

Here, as in *Briscoe,* while the complaint does not recite that the plaintiff was ignorant of the falsity of the defendants' representation, this omission is immaterial because the complaint alleges that the plaintiff relied on the misrepresentation and "* * * ignorance of the falsity of the statement *is necessary* to reliance." *Ibid.* Applying the same logic, the failure to allege that the misrepresentation was material is also not a fatal defect in the complaint. The complaint alleges the

---

[4] Defendants argue that they did not raise this question below because plaintiff relied solely on § 551 of the Restatement, and not on a fraud theory. Defendants are mistaken.

Plaintiff's pleading was sufficient to put defendants on notice that plaintiff was claiming fraud. Plaintiff demurred to defendants' affirmative defense of contributory negligence on the basis that plaintiff had pled an intentional tort. In a trial memorandum, plaintiff contended that it had pled and proved both a claim for nondisclosure under § 551, and a cause of action for "intentional misrepresentation." *See Salem Sand v. City of Salem,* 260 Or 630, 638, 492 P2d 271 (1971); Prosser, *supra,* § 106.

terms of the cash collateral agreement, the defendants' misrepresentation and the plaintiff's detrimental reliance resulting in damage to the plaintiff. The materiality of the misrepresentation is apparent in these allegations.

With respect to the element of "right to rely," *Briscoe* holds that the allegation that "* * * a person *has a right* to rely is a conclusion which the law draws from facts and is not an allegation or finding of fact." 268 Or at 610. (Emphasis in original).

"Intent to defraud" is the intent that the misrepresenttion "should be acted on by the person and in the manner reasonably contemplated." *Conzelmann, supra,* 190 Or at 350. The bank's complaint alleges that it relied on financial information, provided by defendants, as indicating that all receipts were being deposited in the cash collateral account, which was the only source of funds available to pay Millers' obligations. The complaint recites that the defendants' representations were false and known by defendants to be false. Finally, the complaint alleges that defendants *knew* or should have known that the bank was relying on the representations. The import of these allegations is that the defendants misrepresented financial information with the knowledge and intent that the misleading information would be acted upon by the bank and in the manner reasonably contemplated.

We find that the bank's complaint is sufficient to state a cause of action for fraud, at least where defendants have not challenged the complaint until this appeal. The complaint "served its principal function" and placed defendants on notice of plaintiff's claim for fraud. *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 351, 546 P2d 1065 (1976).

As we have noted, despite the trial court's observation that the defendants' conduct was "on the very edge of fraud," the court held for the defendants because the court determined that the plaintiff had

[642]

failed to prove that the defendants intended to defraud the bank.

The trial court's findings, which we have already summarized and which are supported by the evidence, incorporate all the elements of fraud except for the requisite intent. The trial court concluded that,

> "What defendants Fought and Jones did do was to present a list of checks to the plaintiff, knowing them to be false, and by nonverbal conduct representing them as true, knowing the bank was relying on the false lists to its damage. * * *."

The trial court found that the bank was damaged in the amount of $105,706.67.

Despite these conclusions, the trial court felt that the final question was,

> "Were the actions of the CPA's done with intent to defraud the bank or were they done due to a good faith, but false interpretation of their ethical duty to their client?"

Solely because the trial court felt that the defendants were motivated by "good faith," the trial court held that the plaintiff had failed to prove the intent to defraud. The plaintiff argues that the trial court erred by employing an incorrect legal definition of the intent to defraud. We agree.

The intent to defraud does not consist of bad motives. Rather,

> "* * * The requisite intent to mislead consists of a defendant misrepresenting a material fact for the purpose of misleading the other party or *with knowledge he is misleading the other party* or in reckless disregard of the fact he is misleading the other party. * * *." *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 547-548, 487 P2d 870 (1971)(emphasis added); *see also Gardner v. Meiling, supra; Weiss v. Northwest Accept. Corp., supra; Conzelmann v. N.W.P. & S. Prod. Co., supra.*

In discussing the intent underlying an intentional misrepresentation, Prosser observes that,

[643]

"* * * The fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability, so long as he did in fact intend to mislead." W. Prosser, Law of Torts, § 107, p. 700 (4th ed 1971) (footnotes omitted).

The trial court found that the defendants acted with the knowledge that they were misleading the bank. The defendants intended to defraud the bank.[5] Under such circumstances, the defendants were guilty of fraud.

Reversed and remanded for entry of a judgment in favor of plaintiff.

---

[5] The parties disagree as to whether the defendants had a duty to disclose their client's fraudulent actions to the bank. However, as plaintiff noted below, this "is not a mere silence case * * *." The trial court found that, in presenting the false lists of checks to the bank, the defendants had affirmatively misrepresented the list as being true. "Restatement (Second) of Torts, § § 550, 551 (1977) states that nondisclosure is actionable when there is a duty to speak, but notes no such duty requirement where there has been an active concealment. * * *." *Paul v. Kelley,* 42 Or App 61, 65, 599 P2d 1236 (1979) (footnote omitted); *see also Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973); *Salem Sand v. City of Salem, supra;* Prosser, *supra,* §106.