Argued and submitted November 7, 1980,
reversed and remanded June 23, 1981

# UNITED STATES NATIONAL BANK
# OF OREGON et al,
*Respondents,*
*v.*
# FOUGHT et al,
*Petitioners.*

## (CA 14150,   SC 27155)

630 P2d 337

John R. Faust, Jr., Portland, argued the cause for petitioners. With him on the briefs were Kenneth E. Roberts, Ridgway K. Foley, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

William H. McAllister, Portland, argued the cause for respondents. With him on the briefs were Richard C. Josephson, and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Before Howell,** Presiding Justice, and Lent, Linde, Peterson, and Tanzer, Associate Justices.

LENT, J.

Linde, J., filed a concurring opinion.

Tanzer, J., filed a dissenting opinion.

** Retired November 30, 1980

## LENT, J.

This is an action at law for damages allegedly resulting from misrepresentation. The case was tried without a jury, and the trial judge made findings of fact, from which he concluded that plaintiff[1] was not entitled to prevail and therefore entered judgment for defendants. Upon plaintiff's appeal, the Court of Appeals held that plaintiff had pleaded and proved a cause of action for "fraud"[2] and reversed and remanded for entry of judgment in plaintiff's favor. *U. S. National Bank v. Fought,* 46 Or App 635, 612 P2d 754 (1980).

We allowed defendants' petition for review, ORS 2.520, 289 Or 587 (1980), to consider whether under the facts pleaded and the facts found by the trial judge plaintiff is entitled to recover.

### Factual Background

We take the factual background[3] from the trial judge's findings of fact. We believe it desirable to set forth this background in order that our discussion of the issues may be better understood.

---

[1] There were actually two plaintiffs, but the parties and the Court of Appeals treated them as one, and we shall do likewise. Defendants cross-appealed, but neither the Court of Appeals nor this court find a separate discussion of the cross-appeal to be necessary to disposition of the case.

[2] The parties and the Court of Appeals seem to have used the word "fraud" as excluding the kind of conduct giving rise to liability for misrepresentation under Restatement (Second) of Torts, § 551 (hereinafter § 551). As will appear later, we believe § 551 is concerned with conduct which subjects a defendant to liability in a cause of action in deceit.

[3] Plaintiff's assignment of error on appeal was as follows:

"The trial court erred in failing to grant judgment in favor of plaintiff and against defendants in the amount of plaintiff's prayer based upon the Findings of Fact, Conclusions of Law and Judgment."

Obviously, the trial court could not have erred in failing to grant judgment for plaintiff "based upon the * * * Judgment" for defendants. We take it that plaintiff is contending it should prevail upon the facts as found by the trial judge. Because we find there is evidence in support thereof, we accept those facts.

This case was tried a year after our decision in *Hendrix v. McKee,* 281 Or 123, 575 P2d 134 (1978), but two years prior to our decision in *Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981). By dictum in *Hendrix* we suggested that in an action tried to the court without a jury, a party who believes that he is entitled to prevail on the evidence, as a matter of law, should apprise the trial court of that belief prior to submission of the factual issues for resolution. In *Falk* we went part way

Miller's International, Inc., (herein "MI") in August of 1976 was indebted to plaintiff in an amount in excess of $1.4 million upon loans. MI was in default on payment on the loans. Defendants were a firm of certified public accountants and had been performing accounting and auditing services for MI for several years. Defendants had prepared financial statements on the operation of MI, which had been supplied to the plaintiff at various times prior to August, 1976.

In August, 1976, MI, acting through its president, Kenneth Miller, agreed with plaintiff that all cash flow, proceeds of inventory and collections from accounts receivable would be deposited in a cash collateral account to be controlled by plaintiff. From that account plaintiff agreed to make additional advances to MI for payment of items approved by plaintiff.

At about the same time, MI discharged its in-house bookkeeper and defendants began to perform bookkeeping, as well as accounting, services for MI. Defendant Jones was primarily responsible for the bookkeeping. Miller told plaintiff to rely on Jones for financial information, and Jones confirmed this to plaintiff.

To obtain payment of items from the cash collateral account, MI would present to the plaintiff every two weeks a list of checks that MI desired to have approved. Those that plaintiff approved would then be issued. The lists were prepared by defendants' employees and were brought to plaintiff by either Miller or Jones.

In November, 1976, Miller began to divert funds from MI by either obtaining cash from, or endorsing checks payable to, MI and depositing the monies in his personal bank account in a different bank. Miller used part of the diverted funds to pay bills of MI which plaintiff would not

---

in adopting the dictum of *Hendrix.* The assignment of error in the case at bar presents a different issue. Here, plaintiff is not contending that, *on the evidence,* it is entitled to prevail as a matter of law. Rather, plaintiff contends that, *upon the facts* found by the trier of fact, plaintiff is entitled to recover as a matter of law. Plaintiff did attempt to bring this to the attention of the trial judge by a motion for reconsideration after the entry of the Findings of Fact, Conclusions of Law and Judgment.

have authorized to be paid. During November and December, 1976, and January, 1977, defendants were aware of Miller's activities in this respect. Miller told Jones not to reveal these activities to plaintiff.

Defendants continued to prepare "financial information," and Jones would personally present lists of checks for plaintiff's approval. When doing so, Jones did not disclose to the plaintiff Miller's activities. Defendants knew that Miller was using the diverted funds for purposes which plaintiff would not have authorized. Plaintiff was unaware of Miller's diversions of funds.

During all of this time defendants were aware of the terms of the agreement between MI and the plaintiff that all of such funds should have been deposited in the cash collateral account.

In December, 1976, plaintiff discovered a discrepancy between MI's receipts and deposits to the cash collateral account. At a meeting held among plaintiff's employees, Miller, defendant Fought and Jones on January 14, 1977, Miller and the defendants were questioned about the discrepancy. Fought responded that he would look into the matter. Jones said nothing and "wilfully" withheld disclosure of Miller's activities from plaintiff.

From the onset of the diversions to the time of the meeting of January 14, defendant prepared no financial statements verifying or certifying the financial position of MI.

We now quote directly from the trial judge's findings:

"What defendants Fought and Jones did do was to present a list of checks to the plaintiff, knowing them to be false, and by nonverbal conduct representing them as true, knowing the bank was relying on the false lists to its damage. The actions of the defendant [sic] were on the very edge of fraud. The bank was damaged over $100,000 by the accountants' conduct."

The trial judge concluded that one element of fraud was missing. He relied upon language of this court from *McFarland v. Carlsbad Sanatorium Co.*, 68 Or 530, 535, 137 P 209 (1914), which was, in turn, quoted from *Rolfes v.*

*Russel,* 5 Or 400 (1875), stating that one of the elements which had to be proved was that the false representations had to be made with "intent to defraud." The trial judge found that "plaintiff has not proven by clear and convincing evidence that the CPA firm intended to defraud" plaintiff.

Plaintiff has at all times asserted a right to recover under 3 Restatement (Second) of Torts, § 551 (1977) (hereinafter § 551).[4] With respect to the claim of right to recover under § 551, the trial judge found that defendants were not "parties" to the transaction and,

> "Further, the 'duty' and 'reasonable care' language refers to negligence which I find cannot form a basis of recovery."

He concluded that defendants had no duty to disclose under § 551.

---

[4] The part of § 551 on which plaintiff relied in the trial court was:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

"* * * * *

"(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

"* * * * *

"(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

On appeal, plaintiff also relied upon § 551(2)(b):

"(b) matters known to him that he knew to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."

The Reporter in a "Note to the Institute" stated:

"The new Clause (b) duplicates § 529, on Representation Misleading Because Incomplete. It usually, however, is treated as a matter of liability for non-disclosure. It is repeated here to make the Section complete."

**In the Court of Appeals**

Upon appeal plaintiff contended that upon the facts found by the trial judge, plaintiff was entitled to judgment because

"defendants both defrauded the Bank and violated their duty to disclose material facts under the Restatement (Second), *Torts* §§550 and 551 (1977)."[5]

Defendants contended that in the trial court plaintiff had neither alleged nor proved "fraud" and had failed to establish a case under § 551 because defendants owed no duty to plaintiff under that section and because the trial court was correct in stating that the theory of recovery under that section was "essentially one of negligence."

The Court of Appeals found it unnecessary to determine whether § 551 was applicable because, as observed at the outset of this opinion, that court agreed with plaintiff that it had pleaded and proved "fraud."[6]

**Pretrial Proceedings**

In order to understand the way in which this cause was presented to the trial court, a review of proceedings prior to trial is of assistance.

In its amended complaint, upon which it eventually went to trial, plaintiff pleaded that during the fall of 1976 defendants prepared financial statements[7] on the operations of MI and that these statements were supplied to plaintiff with defendants' knowledge and consent. Plaintiff pleaded the agreement with MI, defendants' awareness thereof, Miller's diversion of the funds and defendants' knowledge thereof, Jones' part in the delivery of the lists of checks, and defendants' failure to disclose to plaintiff Miller's diversions. Plaintiff alleged that it relied upon

---

[5] 3 Restatement (Second) of Torts, § 550, states:

"One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

[6] Although the trial court appeared to believe that § 551 is concerned with liability resting upon negligence, and although defendants may have so believed, the Court of Appeals appears to have recognized that this is not the case. *See*, notes 2 and 3, 46 Or App at 637-639.

[7] The trial judge found that after the onset of Miller's diversions defendants prepared no "financial statements."

the "financial statements" prepared by defendants and the lists of checks as "indicating" that the only funds of MI available to pay its obligations were those in the cash collateral account and that all funds receivable by MI were being deposited in that account.

Up to that point in the amended complaint, the word "representation" had not appeared in any form. At that point, in paragraph IX on page 3 of the amended complaint, plaintiffs alleged:

> "Such representations were false when made and known by defendants to be false. Defendants further knew, or should have known, that plaintiff was relying on such representation."

The amended complaint alleged damages in the amount of $105,706.67.[8]

Defendants filed an answer and subsequently an amended answer joining issue as to liability and an affirmative answer alleging that plaintiff's damages, if any, were caused by plaintiff's negligence in certain particulars. Plaintiff demurred to the affirmative defense on the ground "that contributory negligence is not a defense to an intentional tort," citing *Kubeck v. Consolidated Underwriters,* 267 Or 548, 555, 517 P2d 1039 (1974); Restatement (Second) Torts, §§ 481, 545A; Prosser, Law of Torts 426, § 65 (4th ed 1971).

In *Kubeck* the plaintiff sought to recover upon an insurance policy. The defense was that the policy had been issued in reliance upon plaintiff's material misrepresentation concerning the characteristics of the chattel covered. The insurer negligently relied upon the misrepresentation. The issue was whether the reliance, in such circumstances, was justifiable, i.e., whether there was a right to rely. To resolve that issue, this court discussed cases holding that a "fraud-feasor" will not be entitled to prevail by showing the negligence of the other party in believing the misrepresentation.

---

[8] The trial judge found that plaintiff's own accountants found a shortage in the cash collateral account of $105,706.67, but he made no finding that such amount represented damages resulting from defendants' conduct. The Court of Appeals, nevertheless, characterized this as a finding by the trial judge "that the bank was damaged in the amount of $105,706.67" and presumably it is that amount for which the trial court was ordered by the Court of Appeals to enter judgment in favor of plaintiff.

2 Restatement (Second) of Torts, § 481, states the rule that when the defendant is subject to liability because his conduct is intended to cause injury, contributory negligence will not bar recovery.

3 Restatement (Second) of Torts, § 545A, appears in the organizational scheme of the Restatement in a topic concerning "fraudulent misrepresentation" and in a title of that topic treating the subject of "justifiable reliance." The section states:

> "One who justifiably relies upon a fraudulent misrepresentation is not barred from recovery by his contributory negligence in doing so."

The comment expresses that the section is intended to make it clear that justification does not depend upon the plaintiff having acted as would the reasonable man. He may fail to do so and still recover; it is only when his reliance is not justified upon a consideration of his particular qualities and characteristics that he cannot recover.

The cited text from Professor Prosser's treatise merely states the general rule that contributory negligence is not a defense which will bar recovery where the defendant's conduct is actually intended to inflict harm.

This review of the basis of the demurrer has been undertaken because plaintiff has contended both in the Court of Appeals and in this court that by the assertion of this demurrer and these grounds it gave notice to defendant that plaintiff's cause of action was for an "intentional tort." It has been plaintiff's further contention that the trial court recognized this as the nature of the claim by sustaining the demurrer.[9]

In its trial memorandum plaintiff stated that its claim was based upon a failure of defendants to disclose to plaintiff Miller's diversions. In that memorandum plaintiff asserted that the principles governing liability were those stated in § 551(1), (2)(c) and (2)(e), quoted in note 4, *supra*.

---

[9] The trial court's order was:

"IT IS HEREBY ORDERED that plaintiff's demurrer be and is hereby sustained on the basis that plaintiff will prove an intentional tort on the part of defendants at trial. Should plaintiff fail to prove an intentional tort, defendants' evidence regarding their first affirmative answer and defense will be admitted."

Plaintiff confessed to being unable to find any case applying § 551 to facts such as these, but averred that the "principles" of § 551 were applicable to these facts. In the memorandum plaintiff also cited and discussed *Fischer v. Kletz*, 266 F Supp 180 (SD NY 1967), in which a CPA firm prepared financial statements for a client, and those statements were filed as part of a required report to the Securities and Exchange Commission. Some time later the CPA firm discovered that the financial statements were misleading but did not reveal that to the SEC until a year later. The federal trial court judge was aware of Restatement of Torts, § 551, and specifically noted that it was "couched in the specific terms of a 'business transaction.'" He quoted § 551(2)(b), which is now § 551(2)(c).[10] 266 F Supp at 185. He expressed his opinion that the principles of that clause were equally applicable to a situation not involving the immediate parties to a transaction. The plaintiff does not contend, however, that he put his decision on the basis of § 551, and we agree that he did not do so. What he did was to deny a motion to dismiss the complaint alleging that the accountants had a duty to disclose after acquired information that showed their previous statements were inaccurate. The federal trial court judge stopped short of enunciating a rule of common law liability for nondisclosure in those circumstances, choosing to await the weighing of the impact of such a rule until such time as trial upon the facts might present the proper scenario.[11]

Plaintiff's trial memorandum urges:
"The fact that Jones presented the lists of checks for payment as if the cash collateral account was the only source of fudns [sic] constitutes the type of representation by nondisclosure contemplated by §551.
"* * * * *
"The failure of defendants Fought and Jones to disclose the fact of the unauthorized diversions was a wrongful non-disclosure within the meaning of §551."

[10] What was then clause (2)(b) from the original Restatement section is now clause (2)(c) in Restatement (Second). For text of Restatement (Second) § 551(2)(c), see n 4, *supra*.

[11] *See*, S. Gruenbaum and M. Steinberg, *Accountants' Liability and Responsibility: Securities, Criminal and Common Law*, 13 Loy(LA) L R 247, 313 (1980).

Consistent with the trial memorandum was the stance of plaintiff's counsel taken at trial. At the outset of the trial, the judge stated:

> "As I understand it, the single issue is whether the defendants had a legal duty to advise the plaintiff as to certain actions that were being taken by defendant's [sic] client * * *."

Plaintiff's counsel acknowledged that the trial judge had "summarized what the issues are quite well." Later on, the trial judge stated:

> "Well, we aren't arguing that they have to prove fraud. The question that is still in my mind is do they have, if there is fraudulent activity being undertaken by the client Miller, and the accountant is acting almost as an agent for a particular purpose of reporting in the deposits, is there a duty to report that to the lending institution?"

Counsel for plaintiff made no attempt to contradict that statement by the trial judge.

We believe it is a fair conclusion that from the time of filing of the amended complaint through the close of taking evidence upon trial, plaintiff viewed its case as being one governed only by the principles of § 551.

## Posttrial Proceedings

In its posttrial memorandum to the trial court, plaintiff again urged that it was entitled to recover under § 551 and added that it was entitled to prevail because of "the general rule of law that the omission of a material fact constitutes a misrepresentation." Apparently in support of the second asserted ground, plaintiff for the first time cited: *Package Containers v. Director's,* 270 Or 845, 530 P2d 40 (1974) (holding that a lessor was liable where it had an obligation and opportunity to disclose to the lessee facts affecting the amount of rent payable under the lease but had failed to disclose and had concealed the facts); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973) (holding that a party who makes a representation which is misleading because it omits a material fact is liable as for a misrepresentation even though the party had no duty to disclose and would not have been liable had he remained silent); *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 487

P2d 870 (1971) (holding there was liability for nondisclosure of material facts because that can be a form of misrepresentation when defendant has made representations which would be misleading without full disclosure); and *Salem Sand v. City of Salem,* 260 Or 630, 492 P2d 271 (1971) (recognizing that an action in deceit will lie for concealment of material facts as well as for affirmative and positive representations). Plaintiff concluded its posttrial memorandum as follows:

"It is respectfully submitted that plaintiff has pleaded and proved all elements of a cause of action both for non-disclosure under Restatement (Second) *Torts* §551 and for intentional misrepresentation by failure to disclose material facts. Plaintiff should be awarded judgment against defendants in this case."

Plaintiff did not move to amend its amended complaint to conform to proof, but by its posttrial memorandum it did put the defendants and the trial judge on notice that it believed that under the pleadings and evidence it was entitled to recover both under § 551 and for "intentional misrepresentation" for failure to disclose. As noted above, the trial judge considered both theories and held against plaintiff on both.

## On Appeal

In the Court of Appeals defendants complained that until plaintiff's appeal they were not apprised of any theory of recovery other than under § 551. That position is not well taken. We have seen that plaintiff urged the theory of "intentional misrepresentation" by failure to disclose prior to the trial court judgment. Defendants are correct in the sense that plaintiff's position taken in the posttrial memorandum was its first announcement that it viewed its pleading and the evidence as establishing anything other than a claim under the principles of § 551. That posttrial memorandum, according to the trial court file, was served upon counsel for defendants by first class mail posted on February 2, 1979, which was two days after defendants had filed their posttrial brief, but almost seven weeks before the trial judge made and entered his findings and judgment.

We conclude that to and including the time defendants' counsel received plaintiff's posttrial memorandum,

defendants had no reason to believe that plaintiff viewed its case as other than one depending for recovery upon the principles of § 551. That does not dispose of the matter, however, for it is not the label a party places upon his case which determines his right to prevail.

■     From the amended complaint defendants were put on notice of what facts plaintiff alleged to be true and obviously were aware of the evidence which was adduced and received upon trial. Indeed, there was virtually no dispute as to what actually had occurred. The legal consequences were the true subject of the controversy. That plaintiff may not have been fully aware that it could possibly recover upon some basis other than the principles of § 551 until after the close of the taking of evidence does not alter what notice was given to defendants by the facts pleaded and the evidence.

## The Nature of Liability under § 551

At least some of the difficulty in resolving this case has arisen because of confusion in determining the nature of the liability described in § 551.[12] Plaintiff has urged throughout that § 551 describes an "intentional tort." The trial judge concluded the section was concerned with negligence. The defendants did likewise by asserting a defense that plaintiff was negligent and by urging on appeal that the trial judge correctly treated the section as dealing with negligence. Defendants have consistently asserted § 551 is not concerned with "fraud."[13]

The Restatement (Second) of Torts is divided into various divisions, which are usually broken into chapters. In turn, the chapters are further subdivided into topics, which themselves may be further separated into titles. Any one of the above named categories may be made up of one or more sections.

---

[12] The writer here expresses his agreement with Justice Linde's separate opinion concerning the Restatement.

[13] Our own use of the word "fraud" in this opinion will disclose that it has been in quotation marks. We do this because we agree with Professor Prosser that the word has no precise referent:

"There has been a good deal of overlapping of theories, and no little confusion, which has been increased by the indiscriminate use of the word 'fraud,' a term so vague that it requires definition in nearly every case." (Footnotes omitted.) Prosser, Law of Torts 684 (4th ed 1971).

Those who compiled the Restatement (Second) of Torts chose to consider the kind of tortious conduct with which we are concerned in this case in a division, which they entitled "MISREPRESENTATION." The division contains but one chapter entitled "MISREPRESENTATION AND NONDISCLOSURE CAUSING PECUNIARY LOSS." The chapter is subdivided into four topics, respectively entitled:

"TOPIC 1. FRAUDULENT MISREPRESENTATION (DECEIT)

"TOPIC 2. CONCEALMENT AND NONDISCLO-SURE

"TOPIC 3. NEGLIGENT MISREPRESENTATION

"TOPIC 4. INNOCENT MISREPRESENTATION"

Topic 2 contains §§ 550 and 551, respectively entitled "Liability for Fraudulent Concealment" and "Liability for Nondisclosure."

The scope note to the division is in part as follows:

"So far as misrepresentation has been treated as giving rise in and of itself to a distinct form of tort liability, it has been concerned and identified with resulting pecuniary loss. Its origin lay in the common law action of deceit, although, as indicated in Topics 3 and 4 of this Chapter, the liability has now progressed in some respects beyond that action. * * *" Restatement, *supra* at 54, ch 22.

Our review of the organization of this division has led us to the conclusion that, for whatever reason, there has been some deliberate vagueness as to whether the compilers believed that § 551 is concerned with deceit. On the one hand, § 551 lies outside Topic 1. Section 550 contains the word "Fraudulent" in its title, while that adjective is omitted from the title of § 551. On the other hand, the scope note indicates that it is only Topics 3 and 4 that treat of matters not comprehended by the common law action of deceit.

The comments indicate that § 551 is concerned with deceit. Comment b on subsection (1) states in part:

"The conditions under which liability is imposed for *nondisclosure in an action for deceit* differ in one particular from those under which a similar nondisclosure may confer a right to rescind the transaction or to recover back money paid or the value of other benefits conferred. In the absence of a duty of disclosure, under the rule stated in

Subsection (2) of this Section, one who is negotiating a business transaction is *not liable in deceit* because of his failure to disclose a fact that he knows his adversary would regard as material. * * *" (Emphasis added.) Restatement, *supra* at 120.

Moreover, comment d on subsection (2) is concerned with circumstances in which the party under a duty to disclose under subsection (2) is not subject to liability "in an action of deceit."[14]

On the other hand, both the blackletter and the comments utilize language referable to concepts of negligence. Clauses (a) through (e), respectively, describe subjects that one is to disclose to another in certain circumstances. Subsection (2) imposes the duty to disclose but makes it clear that the duty is not absolute. The one required to disclose is only required to exercise reasonable care to disclose. Comments c and d explain that the duty to exercise reasonable care is concerned with whether a reasonable man would disclose and in what manner. Subsection (1) of § 551 then equates the failure to perform the duty required by subsection (2) with that liability which would flow from representation of the nonexistence of the fact which has not been disclosed.

---

[14] Further references which indicate that the compilers of the Restatement (Second) intended to deal with the evolving cause of action for damages for deceit are found in Illustration 2: " * * * A is subject to liability in deceit to B." Keeping in mind that the interest sought to be protected by § 551 is considered by the Restatement (Second) authors to be something less than in matters respecting the plaintiff's interest in the security of his person, land or chattels (or even those of a third person), we note the following language in Comment 1, p 125:

"It is extremely difficult to be specific as to the factors that give rise to this known and reasonable expectation of disclosure. In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware. In such a case, even in a *tort action for deceit,* the plaintiff is entitled to be compensated for the loss that he has sustained. * * *" (Emphasis added.)

In Illustration 9 we find: "A is subject to liability to B for his pecuniary loss in an action of deceit." In Illustration 10 it is stated: "A is subject to liability to B for his pecuniary loss in an action of deceit." In Illustration 11 the words are: "A is subject to liability to B for his pecuniary loss in an action of deceit." In Illustration 12 is found: "A is subject to liability to B for his pecuniary loss in an action of deceit."

In other words, § 551 imposes liability not because the defendant intended to misrepresent, but because the policy choice is to impose upon him, for his failure to exercise reasonable care to discharge his duty to disclose, the same liability that would flow from an intentional misrepresentation. In this sense, § 551 is not an intentional tort, for the defendant's intent would not be relevant.

The genesis of Restatement of Torts, § 551, is not entirely clear. The substance of the section is found in § 627 of Tentative Draft #13 (May 9, 1936), from which the Proposed Final Draft was taken verbatim. The sections appear to be substantially the same despite minor changes in language. The Reporter's explanatory notes indicate that the section is derived from but three cases.

The principal source is described as being the language of Lord Blackburn in the reported decision in the case of *Brownlie v. Campbell,* L. R. 5 A. C. 925 (1880). The Restatement Reporter places the language ascribed to Lord Blackburn in quotation marks, but our reading of that report fails to find that language. The Restatement Reporter purports to quote Lord Blackburn as follows:

> "* * * One who has made a statement, true or honestly believed to be so when made, is bound to communicate any change of condition which falsifies it or, upon discovery of its original falsity, is bound to correct it, unless the person to whom it is made has already acted in reliance upon it or by lapse of time or change of circumstances has no longer any right to so act."

We have not found the true source of that quotation, but we do find that in the report cited by the Restatement Reporter, Lord Blackburn delivered the following:

> "I quite agree in this, that whenever a man in order to induce a contract says that which is in his knowledge untrue with the intention to mislead the other side, and induce them to enter into the contract, that is downright fraud; in plain English, and Scotch, also, it is a downright lie told to induce the other party to act upon it, and it should of course be treated as such. I further agree in this: that when a statement or representation has been made in the *bona fide* belief that it is true, and the party who has made it afterwards comes to find out that it is untrue, and discovers what he should have said, he can no longer

honestly keep up that silence on the subject after that has come to his knowledge, thereby allowing the other party to go on, and still more, inducing him to go on, upon a statement which was honestly made at the time when it was made, but which he has not now retracted when he has become aware that it can be no longer honestly persevered in. That would be fraud too, I should say, as at present advised. And I go on further still to say, what is perhaps not quite so clear, but certainly it is my opinion, where there is a duty or an obligation to speak, and a man in breach of that duty or obligation holds his tongue and does not speak, and does not say the thing he was bound to say, if that was done with the intention of inducing the other party to act upon the belief that the reason why he did not speak was because he had nothing to say, I should be inclined myself to hold that that was fraud also."

L.R. 5 A.C. at 950. The language set off in quotation marks by the Restatement Reporter in the explanatory note appears to be a fair paraphrase of the language we have just quoted from the report of the decision in L.R. 5 A.C. 925 at 950.

The Restatement Reporter directed attention to two other decisions:

"See accord Atlas Shoe Co. v. Bechard, 102 Maine 197 A 390 (1906), with which compare Reid, Murdoch & Co. v. Kempe, 74 Minn. 474 NW 413 (1898)."

In each of the cases cited by the Restatement Reporter a cause of action dependent upon alleged "fraud" of the defendant was asserted. In *Brownlie* the Lords dealt with the matter as if the defendant had made a representation believed by him to be true when made, but later proving to be inaccurate, and a failure by the defendant to advise plaintiff of the defendant's knowledge of the inaccuracy. In *Atlas Shoe Co. v. Bechard,* 102 Me 197, 66 A 390 (1906), the retailer-vendee of goods had, for the purpose of obtaining credit from the wholesaler-vendor, made a written statement of the vendee's assets and liabilities and specifically agreed that the statement might be considered as a new and continuing original statement upon each and every purchase thereafter until the vendee would advise the vendor to the contrary. The vendor continued to extend credit upon subsequent sales to the vendee after the statement, due to changed circumstances, had become untrue,

but the vendee failed to disclose the want of accuracy of the statement in those circumstances. The court affirmed a judgment for the vendor predicated upon fraud of the vendee in failing to disclose the change in circumstances which made his original statement as to his financial condition no longer true.

The Reporter's explanatory notes invite one to compare *Reid, Murdoch & Co. v. Kempe,* 74 Minn 474, 77 NW 413 (1898), with the *Atlas Shoe* case. Upon a comparison, we find the two decisions to be contradictory. The syllabus by the court in *Reid, Murdoch & Co.* follows:

> "The statement of a merchant to a commercial agency was true when made, but, by reason of changes in his financial condition, became untrue prior to purchases of goods by him from 15 to 18 months afterwards from a wholesaler, who knew of and relied on the statement. There was no evidence that the merchant was actually insolvent, or knew that he was insolvent, when he made the purchases, or that he did not make them in good faith. *Held,* that the statement to the commercial agency was not a false representation to the vendor as of the date of the purchase." 77 NW at 413.

If the three cases discussed above were the sole source of the "restatement" of the common law adopted as original § 551, we deem them to constitute a slender reed indeed upon which to predicate that section. That is not to say, however, that the principles expressed by the American Law Institute in the original § 551 are contrary to what we believe the law is or ought to be.

The proceedings of the American Law Institute in May of 1936, in which Tentative Draft #13 was considered, disclose no discussion whatsoever of the proposed section.

This record of the derivation of Restatement of Torts, § 551, indicates that the compilers of the Restatement were intending, in the section, to deal with conduct subjecting one to liability in an action for damages for deceit. We are unable to explain from an examination of the reported decisions in *Brownlie v. Campbell* and *Atlas Shoe Co. v. Bechard,* both *supra,* how the concept of due care found its way into the -blackletter.

In May of 1966, the Council of the American Law Institute submitted Tentative Draft No. 12 to the membership. That Draft contained a reworking of § 551(2). A great number of cases were cited as authority for the various proposed comments to clauses of § 551(2). Those cases were concerned with actions for damages for deceit.

■ We have concluded that despite the inclusion of the concept of due care in the blackletter of the Restatement and Restatement (Second) of Torts, § 551, the section is concerned with conduct which subjects a defendant to liability in an action for damages for deceit. From this it may be said that from the outset of this case, the cause asserted was one in deceit.

### Plaintiff's Right to Recover Under § 551

■■ The trial judge's view of the place of the "duty to exercise reasonable care" in the liability described in § 551 was partly wide of the mark, but that does not mean that he was in error in disallowing recovery under that section. Plaintiff neither pleaded nor proved facts which would sustain a right to recover under § 551. The duty is imposed *only* upon one party to a business transaction to make disclosure to another party to that transaction. The amended complaint contains no allegation that defendants were "party" to a business transaction with plaintiff. Neither is there any evidence in the record of such a relationship. Plaintiff confesses to being unable to find any case which has imposed liability under § 551 on a defendant who is not a party to a transaction with plaintiff. Nevertheless, in contending that we should permit recovery under § 551, plaintiff urges that this court has held that a third party may be liable for his misrepresentations by reason of his relationship to a transaction to which he was not a party, citing *Salem Sand v. City of Salem, supra.* There is nothing in the opinion in that case to indicate that § 551 was even considered.

We are convinced that we should not predicate liability on § 551 unless that section is applicable by its terms. We agree with the trial judge, therefore, that plaintiff was not entitled to judgment on the basis of that section.[15]

---

[15] Although plaintiff mentioned 3 Restatement (Second) of Torts, § 550, in its brief on appeal, it has never argued that section separately from its argument

## Plaintiff's Right to Recover in Deceit

It still remains to be determined whether plaintiff pleaded and proved facts which entitle it to judgment independently of § 551, because a business transaction between deceiver and deceived is not essential to an action for deceit. This was first clearly recognized in *Pasley v. Freeman,* 100 Eng Rep 450 (KB 1789). Prosser, Law of Torts 685, § 105 (4th ed 1971). Professors James and Gray note this almost at the outset of their proposed revision of Harper and James, The Law of Torts (1956), with respect to this kind of tortious conduct:

"* * * After *Pasley,* deceit, as a distinct tort, was definitely disassociated from actions for breach of warranty and the basis for the legal duty was perceived to be independent of contractual relations between the parties. The source of the duty is the law and the basis is the relationship of the parties which usually, but not necessarily involves a business transaction between them.

"The type of interest protected by the law of deceit is the interest in formulating business judgments without being misled by others—in short, in not being cheated. Generally, the law of deceit is limited to misrepresentations which mislead another into an unwise judgment in some business enterprise resulting in financial loss." (Footnotes omitted.)[16]

This court enumerated the elements of an action in deceit in *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757 (1950):

"Comprehensively stated, the elements of actionable fraud consist of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth ; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his

---

based upon § 551. Plaintiff did cite § 550 in arguing that there was an active concealment and in conjunction therewith cited *Musgrave et ux. v. Lucas et ux.,* 193 Or 401, 410, 238 P2d 780 (1951). This court did not rely upon, or even cite, § 550 in that opinion.

We shall not discuss the application of § 550 at any length, but we do note that § 550 is concerned with the relationship between the parties to a transaction. Defendants were not a "party" to a transaction with plaintiff. We doubt the applicability of § 550.

[16] F. James, Jr., and O. S. Gray, *Misrepresentation--Part I,* 37 Md L Rev 286 (1977). *See also, Meader v. Francis Ford, Inc.,* 286 Or 451, 456, 595 P2d 480 (1979), where we said: "It is not necessary that deceit be founded upon a contract."

reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

The plaintiff argued the sufficiency of its complaint to state a cause of action in "fraud" by reference to those enumerated elements, modified by somewhat different language with respect to element (5) stated in *Gardner v. Meiling,* 280 Or 665, 671, 572 P2d 1012 (1977): "(5) his intent that it should be acted upon[.]"

The Court of Appeals noted our enumeration of the elements in *Conzelmann* and expressed its agreement with defendants' argument that the amended complaint failed to state some of the elements explicitly. That argument was:

"The amended complaint does not allege that the list of checks and receipts presented by defendants were material, were prepared with the intent to defraud the Bank, that plaintiff had a right to rely on the representations, or that plaintiff was ignorant of the falsity of the statements."

The Court of Appeals noted that this court has criticized the enumeration in *Conzelmann* as unduly fractionalizing the elements of the cause of action. *See,* for example, *Briscoe v. Pittman,* 268 Or 604, 610, 522 P2d 886 (1974), which this court treated as an action for damages for fraud.[17] The successful plaintiff relied upon a theory of "fraud," and on appeal defendant contended that neither the allegations of the complaint nor the findings of the trial court justified the decree for plaintiff. In discussing the enumeration of elements in *Conzelmann* and in *Musgrave et ux. v. Lucas et ux.,* 193 Or 401, 410, 238 P2d 780 (1951), this court said:

"The two above-cited cases list nine requirements to sustain fraud, but they unduly fractionalize the essential elements. As an illustration, it is unnecessary to allege or find the hearer's ignorance of the falsity of a statement if it is alleged and found that the hearer relied upon it, because ignorance of the falsity of the statement *is necessary* to reliance. Also, while an allegation or finding of reliance is an allegation or finding of fact, whether or not a person *has a right* to rely is a conclusion which the law

---

[17] That treatment of the issue presented was probably overruled in *Halford v. Simpson,* 276 Or 107, 110, 553 P2d 1055 (1976), but the observation concerning the elements of fraud was not thereby affected.

draws from facts and is not an allegation or finding of fact."
(Emphasis in original)

Thus far we find ourselves in agreement with the Court of Appeals as to the asserted deficiencies of the amended complaint. Plaintiff pleaded that it relied upon defendants presenting the lists of checks as indicating that the only funds available to pay obligations of MI were those in the cash collateral fund and that all funds receivable by MI were being deposited in that account. The materiality is not only "apparent" as the Court of Appeals held; it is inescapable. The right to rely is a conclusion of law; therefore, it need not be pleaded as ultimate fact. *Briscoe v. Pittman, supra.* As noted above, this court stated specifically in *Briscoe* that it was unnecessary to allege the hearer's ignorance of the falsity of the statement if reliance is alleged, as it was here.

## Was the Amended Complaint Insufficient?

The pleading question which remains is whether there is any allegation of that intent which is necessary to state a cause of action in deceit. The trial judge and the defendants have taken the position that it is necessary to plead an "intent to defraud." *McFarland v. Carlsbad Sanatorium, supra,* so states. Defendants so urged the trial judge to hold by their citation of that case for that proposition in their trial memorandum and have continued to assert that position in the Court of Appeals and in this court.

For whatever reason this court used that term at the time of the decision in *McFarland* and theretofore, the term has long since passed into disuse. Even under the system of common law pleading, that allegation was not required:

"It should appear that the damage is the result of the deceit. It is not sufficient to charge fraud generally, but the specific *facts* constituting the fraud *must be set forth in some detail,* including the actual misrepresentations. While it is *not necessary to charge an intent to defraud,* it should appear that the representations were intended or calculated to influence the plaintiff to act upon them." (Emphasis added.)

Koffler and Reppy, *Common Law Pleading* 194 (1969), discussing the necessary allegations to plead an action of trespass on the case for deceit. In *Gardner v. Meiling, supra,* we stated that the element was the defendant's intent that his representation be acted upon.

The Court of Appeals was quite right in its analysis and holding that the component of "bad faith" is unnecessary to the imposition of liability. As did that court, we note our agreement with Professor Prosser, who, in discussing the "Intent to Deceive," stated:

> "The fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability, so long as he did in fact intend to mislead." (Footnotes omitted.)

Prosser, Law of Torts 700 (4th ed 1971).

The plaintiff and the Court of Appeals both acknowledge that the amended complaint in this case does not explicitly charge any intent of the defendants to mislead the plaintiff or to cause the plaintiff to act upon the defendants' representations. Both plaintiff and that court assert, however, that the requisite intent is implicitly pleaded.

Plaintiff points to what we said in *Elizaga v. Kaiser Found. Hospitals, supra,* concerning the requisite element of intent:

> "The requisite intent to mislead consists of a defendant misrepresenting a material fact for the purpose of misleading the other party or with the knowledge he is misleading the other party, or in reckless disregard of the fact he is misleading the other party."

259 Or at 547-548. Plaintiff here points to its pleading that Jones presented the certified lists of checks to plaintiff knowing that the funds were being diverted. Although this is not an exact quotation from the amended complaint, that may fairly said to be alleged. Plaintiff then states, "Mr. Jones clearly knew that he was misleading the Bank by his conduct." Whether or not that is true, plaintiff does not even attempt to cite any words of the amended complaint that allege such knowledge on the part of Jones. However, the trial court found the equivalent of that fact when it found that Jones presented the lists of checks "knowing the bank was relying on the false lists to its damage."

The Court of Appeals found the requisite allegation in the following line of reasoning:

> " 'Intent to defraud' is the intent that the misrepresentation '* * * should be acted on by the person and in the manner reasonably contemplated.' *Conzelmann, supra* 190 Or at 350. The bank's complaint alleges that it relied on financial information, provided by defendants, as indicating that all receipts were being deposited in the cash collateral account, which was the only source of funds available to pay Millers' obligations. The complaint recites that the defendants' representations were false and known by defendants to be false. Finally, the complaint alleges that defendants *knew* or should have known that the bank was relying on the representations. The import of these allegations is that the defendants misrepresented financial information with the knowledge and intent that the misleading information would be acted upon by the bank and in the manner reasonably contemplated."

46 Or App at 642. The Court of Appeals then held that this pleading of intent by "import" was sufficient because of the failure of the defendants to challenge the sufficiency of the complaint until appeal.

■ We have stated that when a complaint is challenged for the first time on appeal, we shall not subject it to the same scrutiny for mere technical defects that we might if the complaint's sufficiency was challenged at the first opportunity. For instance, *see Fulton Ins. v. White Motor Corp.*, 261 Or 206, 219, 493 P2d 138 (1972):

> "We hold that where the defect in a pleading, even though material, consists of a mere omission to state a necessary fact, and it appears that the omitted fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. If we can determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, *and that the evidence disclosed the existence of a cause of action,* we will not reverse, but will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly." (Emphasis added.)

As we pointed out in *Richards v. Dahl,* 289 Or 737, 743, 618 P2d 418 (1980), once the case has been tried, there is little reason to examine the pleading. We there said:

"[W]hen evidence has been received, that evidence, rather than the allegations of the complaint, should determine whether the party has presented a cause of action. The pleading is a summary or outline of what the party expects to prove. The proof itself, not the summary, should determine whether the party has a cause of action."

Defendant contends, however, that it would be unfair to apply such rules to hold for this plaintiff upon the theory of an action in deceit. Defendant believed from plaintiff's various descriptions of its cause that plaintiff was proceeding solely on a right to recover under § 551. As we have seen, however, § 551 is concerned with a cause of action in deceit.

## Conclusion

The language we have quoted from *Fulton Ins. v. White Motor Corp.* and *Richards v. Dahl,* both *supra,* indicates the proper disposition of this case. As we have pointed out, no matter by what name plaintiff chose to characterize its cause, the amended complaint set forth the facts which plaintiff expected to prove. Evidence was received, and from that evidence the trial judge made findings of fact. With but one question, those findings show that plaintiff "has a cause of action," in the words of *Richards v. Dahl, supra.*

The question arises out of the trial judge's apparent refusal to find for plaintiff because he was led to believe that plaintiff had to plead and prove an "intent to defraud." As we have noted, that is not an accurate characterization of the intent which is an element of a cause of action in deceit.

Whether the necessary intent has been established should be determined in this case by our characterization of that element in *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 547, 487 P2d 870 (1971):

"The requisite intent to mislead consists of a defendant misrepresenting a material fact for the purpose of misleading the other party *or with the knowledge he is misleading the other party* or in reckless disregard of the fact he is misleading the other party." (Emphasis added.)

This is an action at law, and it is not the function of an appellate court to try the issues of fact. Whether the

requisite intent has been established by clear and convincing evidence in the record is a question for the trial court. Here, the case was tried without a jury, and a transcript of proceedings and the exhibits are available. We believe, therefore, that the proper disposition of this case is to remand it to the trial court for the same trial judge to find whether or not defendants had the necessary intent to subject them to liability. *Compare* our similar disposition in *Briscoe v. Pittman,* 268 Or 604, 522 P2d 886 (1974), *overruled on other grounds, Halford v. Simpson,* 276 Or 107, 110, 553 P2d 1055 (1976).

If the trial court finds the necessary element of intent has been established, that court will also be required to fix the amount of damages.

Reversed and remanded.

**LINDE, J.,** concurring.

Much of the difficulty in this case has been created because the parties litigated it as though the Restatement of Torts were an authoritative statement of Oregon law, like a statute, and the trial court similarly responded to the parties' arguments on that assumption. Now Justice Lent's opinion for the court performs Herculean labors to determine just what Restatement (Second) of Torts § 551 means to say about the elements of the tort it describes and whether plaintiffs pleaded and proved a tort known to Oregon law.

The Restatements are products of a private, unofficial organization, the American Law Institute. They are famous as an effort to bring analytical coherence into nonstatutory fields of law otherwise marked by a flood of discrete instances and judicial rationalizations of divergent results. This court has recognized their value by frequent citations. But they are not statutes.[1] To repeat what was said in *Brewer v. Erwin,* 287 Or 435, 455, n. 12, 600 P2d 398 (1979):

---

[1] At least not until enacted as such. *See* ORS 30.920, enacting Restatement (Second) of Torts § 402; Vetri, *"Legislative Codification of Strict Products Liability Law in Oregon,"* 59 Or L Rev 363, 365 (1981).

"Although this court frequently quotes sections of the Restatements of the American Law Institute, it does not literally 'adopt' them in the manner of a legislature enacting, for instance, a draft prepared by the Commissioners on Uniform State Laws, such as the Residential Landlord and Tenant Act. In the nature of common law, such quotations in opinions are no more than shorthand expressions of the court's view that the analysis summarized in the Restatement corresponds to Oregon law applicable to the facts of the case before the court. They do not enact the exact phrasing of the Restatement rule, complete with comments, illustrations, and caveats. Such quotations should not be relied on in briefs as if they committed this court or lower courts to track every detail of the Restatement analysis in other cases. The Restatements themselves purport to be just that, 'restatements' of law found in other sources, although at times they candidly report that the law is in flux and offer a formula preferred on policy grounds."

Because Restatement (Second) of Torts § 551 is not a statute, it is misleading to speak of pleading or proving a cause of action "under" this or any other section, at least until this court has firmly said that the cited section corresponds to the law in Oregon. *Cf. Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 208-210, 582 P2d 1365 (1978). At best, such a way of speaking is dangerous "shorthand," as this case demonstrates. It cannot substitute for an independent analysis and presentation of the elements that make, or should make, defendants liable to plaintiff in Oregon law, when the relevance of some of the elements to a theory of liability is an open question in this state. This is true, for instance, of the elements of intent, or knowledge, or negligence, or "privity," or perhaps of prescribed standards of professional responsibility, in the liability of the accountants in this case.

No such independent analysis has been presented here, and the questions remain open. As for the disposition of this case, I concur in the court's opinion.

**TANZER, J.,** dissenting.

The majority acknowledges that this case was not tried as a fraud case. In my opinion, it should not be converted to one on appeal.

I assume that from the inception of their representation of their respective clients, the lawyers for both plaintiffs and defendants were alert to the notion that fraud was a possible basis of claim for relief. Yet, until the fallback reference in a post-trial memorandum, at no·time in the trial court did plaintiffs' counsel assert fraud or deceit or defendants' counsel contend against it. There are practical reasons why both sides may have determined that fraud was a theory to avoid: insurance coverage and the higher standard of proof come to mind. I assume that the lawyers knew what they were doing. They intentionally tried a non-fraud case, but the majority holds that they negligently tried a fraud case.

The root of the difficulty is that plaintiffs' case was theoretically flawed from the beginning. Section 551 of the Restatement of Torts was repeatedly cited as the legal basis of plaintiffs' case as if it were law, but it is not necessarily. (I concur entirely with Judge Linde's comments in this respect.) Even if it does reflect Oregon law, it is inapplicable to this case because, as the majority implies, its scope only includes business transactions such as sales. Its history indicates that its purpose was to liberalize the traditional doctrine of caveat emptor, not to create a general tort of commercial non-disclosure. 42 ALI Proceedings 370 (1965). Its words are consistent with its underlying intent to regulate sales and, to some degree, the broader class of "business transactions" (e.g., loans, leases) as opposed to on-going business arrangements and relationships such as that in this case. Plaintiffs, by avoiding a theory of deceit and by citing section 551 as the sole basis for their case, did not present a sound legal theory of recovery.

The majority holds that section 551 states a cause of action for fraud or deceit, that plaintiffs (despite their best efforts to do otherwise) alleged and tried a deceit case in the terms of section 551, and that the judge, finally aware of deceit as a basis of the case, should make new findings by clear and convincing evidence. This holding offends some fundamental principles of appellate overview. It is basic that we do not review for errors not preserved at trial. The trial court was never requested to make findings by clear and convincing evidence and his findings by a

preponderance were not excepted to on that basis. We have no procedural basis on appeal to hold that the trial court erred in this respect and to mandate the trial court to make new findings differently.

I do not wish to be understood as holding that persons who are involved in a business arrangement for the purpose of assuring reliability of information and who mislead by half-truth cannot be held liable in a lawsuit based upon a proper theory such as deceit or negligent non-disclosure. That was not this case. Therefore, I dissent from the remand for new findings.